UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. PEDRO REINHARD,<br><br>              Plaintiff,<br><br>      - against -<br><br>THE DOW CHEMICAL COMPANY and<br>ANDREW N. LIVERIS,<br><br>              Defendants. | Case No.:    07 CV 3641 (RPP)<br><br>ECF Case |

**DEFENDANT THE DOW CHEMICAL COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(a)**

David M. Bernick, P.C.
Peter D. Doyle (PD 1735)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

**TABLE OF CONTENTS**

Page

BACKGROUND .................................................................................................3

    A.    Dow's First-Filed Action In The Eastern District Of Michigan. ..........................3

    B.    Reinhard's Present Action In This Court. ................................................4

    C.    Kreinberg's New York State Court Action. ...............................................5

ARGUMENT .....................................................................................................6

    THIS MICHIGAN-CENTERED ACTION SHOULD BE TRANSFERRED TO
    THE EASTERN DISTRICT OF MICHIGAN WHERE IT COULD BE HEARD
    TOGETHER WITH DOW'S FIRST-FILED ACTION. ...................................6

    A.    This Action Could Have Been Brought In The Eastern District Of
        Michigan. ...................................................................................8

    B.    The Transfer Factors Strongly Favor Transfer Of This Action To The
        Eastern District Of Michigan. ........................................................8

        1.    Locus Of The Operative Facts. .............................................8

        2.    Convenience Of The Parties. ................................................9

        3.    Convenience Of Witnesses. ................................................10

        4.    Location Of Relevant Documents And The Relative Ease of Proof. ........11

        5.    Forum's Familiarity With The Governing Law. .........................11

        6.    Trial Efficiency And The Interests Of Justice. .........................11

        7.    Relative Means Of The Parties. ...........................................12

        8.    Availability Of Process To Compel Attendance Of Unwilling
            Witnesses. ..................................................................13

        9.    Plaintiff's Choice Of Forum. .............................................14

CONCLUSION ...............................................................................................16

i

Defendant The Dow Chemical Company ("Dow") moves to transfer this action to the Eastern District of Michigan, Northern Division, where Dow filed an action earlier the same day against the plaintiff here and a second individual who (also on the same day) filed a parallel case in New York state court. This action and the related state court suit have no material connection to New York and were filed in New York for purely strategic reasons that run directly contrary to the jurisprudential goals that underpin Section 1404(a). Neither plaintiff in either case is a citizen of New York or resides in New York. And all of the cases arise from a common set of facts that center upon employment relationships, fiduciary obligations, and a course of conduct — all of them directly tied to Dow's corporate headquarters in Midland, Michigan and affecting the innermost corporate strategies developed and directed from there. Breaches of those obligations took place there in key meetings and discussions. Termination of the employment relationships took place there. Nor is New York the focal point for other actions implicated in this case; rather such other actions took place both in New York and in other locations outside of New York (to the extent they are presently known to Dow). The sole apparent reason for the prosecution of this case in New York lies not in the underlying facts, but in the now manifest effort by the plaintiffs in this case and the New York state court case to fractionate what should be one case into at least two cases, pending in different courts in a state remote from the core events at issue. Transfer of this case under Section 1404 is an essential step in both reversing this unilateral effort to obtain de facto deconsolidation and bringing a unitary controversy before a single court.

More specifically, both this action and Dow's Michigan action center around Dow's termination of the employment of plaintiff J. Pedro Reinhard, one of Dow's senior executives, in Midland, Michigan. As set out in Dow's Michigan complaint, the employment of Reinhard and another senior Dow executive, Romeo Kreinberg, was terminated in Michigan because of clear breaches of their fiduciary duties to Dow, which caused substantial harm to Dow.

1

On May 8, 2007, Dow filed the first lawsuit relating to these events in the Eastern District of Michigan, asserting claims against Reinhard and Kreinberg for breach of fiduciary duty and breach of contract and seeking a declaratory judgment with respect to Dow's contractual rights and obligations vis-à-vis the defendants. In addition to the federal question jurisdiction invoked in Dow's amended complaint, Dow has requested immediate discovery in that action to confirm the existence of diversity jurisdiction and anticipates that the question of federal jurisdiction will be resolved promptly in that court. Later in the day on May 8, two other actions were filed. Reinhard filed the present action in this Court, and Kreinberg filed an action in New York State Supreme Court — asserting defamation, contract, and tort claims arising out of the termination of their employment. With respect to Reinhard's present action, Dow presently moves to transfer the action to the Eastern District of Michigan, Northern Division, a more convenient and appropriate forum where it can be heard together with Dow's first-filed action. Later this week, Dow intends to remove Kreinberg's state court action to this Court and then similarly request that the action be transferred to Michigan.

Given that there will be no challenge to subject matter jurisdiction in the present action and having sought discovery on diversity jurisdiction issues in the Michigan federal court, Dow believes that any questions regarding the existence of federal jurisdiction are most appropriately resolved by the Michigan court. A second key forum question involves the appropriate venue for this dispute, which Dow raises with the present motion to this Court. Interests of efficiency and fairness mandate that litigation involving related claims arising out of the same events be heard in the same forum, and the strong presumption is that they be heard in the forum of the first-filed lawsuit. Therefore, Dow maintains that that forum should be the Eastern District of Michigan and that this Court should transfer this action to that district, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice."

The present action has no meaningful connection to this District. Plaintiff Reinhard is a Florida domiciliary who did not live or work in New York. Defendant Dow is a

2

Delaware corporation with its long-time (110-year) principal place of business in Michigan. Defendant Andrew Liveris, Dow's President, Chief Executive Officer, and Chairman, is based at Dow in Michigan and is domiciled in Michigan. Reinhard's claims are centered on alleged actions occurring in Michigan. Dow's deliberations and decision concerning the termination of Reinhard's employment — the basis of his contract claim — all took place in Michigan. Dow's press release and subsequent statements regarding Reinhard's termination — the basis of his libel claim — were issued by Dow in Michigan. The only connection with this District that Reinhard alleges is that Dow's purportedly defamatory statements were circulated by defendants in New York (and elsewhere) and were disseminated by the press in New York (and presumably in every other state).

The factors considered by courts in this Circuit when deciding to transfer a case, including the locus of the operative facts, convenience of witnesses and parties, and location of relevant documents, all mandate transfer of this action to the Eastern District of Michigan. Reinhard's attempt to litigate these claims in this District, where none of the parties reside and where none of the central events at issue occurred — together with Reinhard and Kreinberg's obviously coordinated attempt to avoid Michigan by filing separate federal and state complaints in New York — should be rejected for what it is:  a forum-shopping gambit to divert this dispute from its natural forum in Michigan.

## BACKGROUND

### A.    Dow's First-Filed Action In The Eastern District Of Michigan.

On May 8, 2007, Dow filed an action in federal court in the Eastern District of Michigan against Reinhard and Kreinberg.  As alleged there, Reinhard and Kreinberg, among Dow's most senior and trusted executives, were involved in Dow's most important strategic decisions and had access to Dow's most sensitive information.  (Dow Am. Cplt. ¶¶ 11-13, attached as Ex. A to the Affidavit of Duncan A. Stuart.)  In breach of their fiduciary duties to Dow, Reinhard and Kreinberg engaged in unauthorized and undisclosed communications with third parties encompassing major potential transactions, including the sale of the entire company.

These actions triggered a series of bewildering press reports to the effect that Dow was the target of what would be the largest-ever leveraged buyout — reports extremely disruptive to the company's business objectives, its customer base, and its employees. (*Id.* ¶¶ 21-38.) Despite their awareness of Dow's extensive search for the source of those rumors, Reinhard and Kreinberg never disclosed their participation in third-party discussions regarding proposed transactions involving Dow. (*Id.*) Ultimately, three months after these rumors first surfaced, Dow learned about Reinhard's and Kreinberg's unauthorized actions not from them but from a major international financial institution that met with defendant Andrew Liveris, Dow's CEO, President and Chairman of the Board, in Midland, Michigan. (*Id.* at ¶¶ 37-38.) When confronted with this information at a meeting in Midland, Michigan, Reinhard and Kreinberg denied breaching their fiduciary duties or participating in any meetings with third parties regarding proposed Dow transactions, and they rejected an opportunity to explain their conduct. (*Id.* at ¶ 42.) After review with its Board of Directors, Dow terminated Reinhard's and Kreinberg's employment on April 12, 2007. As with all the other events, the termination was carried out in Midland, Michigan. (*Id.* at ¶¶ 44-45.)

Based on these events, Dow filed its lawsuit against Reinhard and Kreinberg on the morning of May 8, 2007, in the Eastern District of Michigan, Northern Division, located in Bay City, Michigan. As subsequently amended on May 16, 2007, Dow's complaint asserted claims for breach of fiduciary duty and breach of contract and sought a declaratory judgment as to its contractual rights and legal rights under ERISA and COBRA with respect to certain equity-based compensation and other benefits involving Reinhard and Kreinberg. Federal jurisdiction in that action is based on *both* federal question and diversity jurisdiction.

**B.    Reinhard's Present Action In This Court.**

Later on May 8 (the day Dow filed its Michigan complaint), Reinhard filed the present action in this Court, asserting claims for breach of contract and libel arising out of the termination of his Dow employment and Dow's statements about that termination. As reflected in Reinhard's own complaint, the decision to terminate Reinhard's employment was made by

4

Dow in Michigan, where Reinhard also was informed of that decision. (Reinhard Cplt. ¶¶ 24-26 (Stuart Aff. Ex. B).) Reinhard's libel claim is based on Dow's April 12 press release announcing the termination of his employment, a letter to customers posted on Dow's website maintained in Midland, Michigan, and subsequent related public statements — actions taken by Dow in Michigan.

       The contacts with this District asserted in Reinhard's complaint are few and insubstantial. First, the complaint asserts that a "major Dow facility" is located in New York, that many of Dow's advisors, bankers, and customers are located in New York, and that Dow executives routinely and systematically travel to New York for business activities. (*Id.* ¶ 10.) But the fatal flaw is that — even accepting these assertions as accurate[1] — Reinhard's complaint fails to connect these contacts in any way to the claims. Second, the complaint stresses that the alleged defamatory statements were widely circulated in this District. (*Id.* ¶ 10.) The circulation of these statements was not limited to this District, however, as the complaint itself acknowledges — referring to the national press and prominently citing an article published in the *Saginaw News*, which is based in Michigan just over twenty miles from Dow's Midland headquarters. (*Id.* ¶¶ 30, 37.) Third, the complaint refers in passing to the fact that a mailed supplement to Dow's annual meeting notice and proxy statement, which repeated information about the employment terminations, bore the New York return address of the Bank of New York, Dow's transfer agent. (*Id.* ¶ 36.)

    **C.**    **Kreinberg's New York State Court Action.**

       In addition to the present action and Dow's Michigan action, Romeo Kreinberg — the second former Dow employee at the center of these events — filed a complaint against

---

[1]    Dow does not have a "major" facility in New York. Dow has one minor supply chain facility for a minor subsidiary in Niagara Falls, New York that employs less than 20 people of the more than 40,000 people employed by Dow and its consolidated subsidiaries world-wide. By contrast, Dow employs more than 5,500 people in Midland, Michigan.

Dow and Liveris in New York State Supreme Court, New York County, asserting claims for defamation and tortious interference. (Stuart Aff. Ex. C.) As noted above, Dow will remove that case to this Court and then similarly move to transfer it to the Eastern District of Michigan, thereby allowing all three actions to be heard in one forum — in Michigan.[2]

## ARGUMENT

### THIS MICHIGAN-CENTERED ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN WHERE IT COULD BE HEARD TOGETHER WITH DOW'S FIRST-FILED ACTION.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court makes its transfer determination based on "notions of convenience and fairness ... on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (internal citation omitted). Courts in this Circuit "consider numerous factors in determining the balance of convenience and fairness on a motion to transfer including: (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances." *American Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006); *see also Saccoccio v. Relin, Goldstein & Crane, LLP*, No. 06 Civ. 14351, 2007 WL 1334970, at *1 (S.D.N.Y. May 7, 2007); *Chrome Hearts, Inc. v. Montana Street Wear, Inc.*, No. 95 Civ. 10736, 1996 WL 306368, at *1 (S.D.N.Y. June 7, 1996). "There

---

[2]    Continuing the approach of bringing fragmented litigation in forums unrelated to the events at issue, Kreinberg also filed a lawsuit in labor court in Germany against three Dow-affiliated German companies, asserting claims related to the termination of his employment. (Stuart Aff. Ex. D (German Kreinberg complaints and English translations).)

is no rigid formula for balancing these factors and no single one of them is determinative."
*American Eagle*, 457 F. Supp. 2d at 477 (quoting *Arthur Metzler & Assoc. Consulting Eng'rs,
P.C. v. Group Goetz Architects*, No. 01 Civ. 7253, 2002 WL 764745, at *4 (S.D.N.Y. Apr. 29,
2002)).

       Although a party seeking transfer ordinarily has the burden of proof to justify
transfer, that burden is inapplicable where there are two competing lawsuits. In such situations,
as here, the first-filed lawsuit — Dow's Michigan action — has priority. "[W]here there are two
competing lawsuits, the first suit should have priority, absent the showing of balance of
convenience or special circumstances giving priority to the second." *D.H. Blair & Co. v.
Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (quoting *First City Nat'l Bank & Trust v. Simmons*,
878 F.2d 76, 79 (2d Cir. 1989)); *see also 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860
F. Supp. 128, 131 (S.D.N.Y. 1994) ("Generally, there is a strong presumption in favor of the
forum of the first-filed suit.") (citing *New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.
1991) and *Columbia Pictures Indus. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1997)). In
situations such as the present one involving two related actions in two different judicial districts,
considerations of economy, efficiency, and fairness mandate that the actions be tried in one
district, and applying a burden of proof to the party who happens to be the first to seek such
consolidation would defeat those goals.

       There are no "special circumstances" to take priority away from Dow's first-filed
Michigan lawsuit. In fact, all the circumstances and factors weigh heavily in favor of the
Michigan forum. As outlined below, this action could have been brought in the Eastern District
of Michigan, and an examination of the transfer factors makes clear that Michigan is the more
appropriate forum. No party is a New York resident, while both defendants are Michigan
residents. Virtually all of the key events took place in Michigan, and therefore the vast bulk of
the witnesses and documents are located there. Transfer to Michigan and consolidation with
Dow's already-filed related action would both promote efficiency and the interests of justice and

7

would allow the dispute to be heard in the forum with the closest ties — in reality the only ties — to the dispute and the parties.

A.    **This Action Could Have Been Brought In The Eastern District Of Michigan.**

The threshold determination in deciding a motion to transfer under Section 1404(a) is whether the action could have been brought in the proposed transferee district. *See Herbert Ltd. P'ship v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). Venue for the present diversity action is proper in the Eastern District of Michigan, Northern Division (the proposed transferee district) on two grounds. First, a diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a)(i); *see also* 28 U.S.C. § 1391(c) ("a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"). Here, both defendants, Dow and Liveris, reside in Michigan and in the Eastern District of Michigan. (Reinhard Cplt. ¶¶ 10-11; Stuart Aff. ¶¶ 6-7.) Second, a diversity action may be brought in "a judicial district in which a substantial part of the events giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). As discussed herein, all of the key events in this action occurred in the Eastern District of Michigan.

B.    **The Transfer Factors Strongly Favor Transfer Of This Action To The Eastern District Of Michigan.**

Turning to the nine factors considered by courts in this Circuit in assessing motions to transfer, six of those factors (1 through 6 below) favor the Eastern District of Michigan over this District, while the other three factors (7 through 9 below) are neutral between those forums.

1.    **Locus Of The Operative Facts.**

The locus of operative facts for this dispute is Michigan. The dispute concerns a decision taken by the Dow Board of Directors in Michigan and a termination of employment delivered in Michigan. Virtually all of the key events occurred in Michigan, including:

- The entering of the alleged agreements that serve as the basis for Reinhard's breach of contract claim;

8

- The issuance of the purportedly defamatory statements by Dow employees;

- Reinhard's acquisition of confidential information about Dow;

- Reinhard's participation in meetings with Dow executives where he should have disclosed his actions but instead remained silent; and

- The termination of Reinhard's employment.

(Dow Am. Cplt. ¶¶ 11-13, 42, 44-45; Reinhard Cplt. ¶¶ 24-26, 29, 31-33.)

"Courts routinely transfer cases when [as here] the principal events occurred ... in another district." *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (internal citation omitted); *see also Hall v. S. Orange,* 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000) (transferring venue to the District of New Jersey because "a substantial part of the events ... occurred in ... New Jersey" even though "some events giving rise to plaintiff's claims occurred in the Southern District [of New York]").

### 2.    Convenience Of The Parties.

Michigan is by far the more convenient forum for the two defendants — Dow, which has its corporate headquarters there, and Liveris, who resides and works there. On the plaintiff side, there is no indication that New York is a particularly convenient forum for Reinhard, who neither works nor lives there. (*See* Reinhard Cplt. ¶ 9 (alleging that he is a citizen of Brazil and domiciled in Florida).) Even if Florida were Reinhard's only residence, the fact that Florida is slightly closer to New York than Michigan should have no bearing on this analysis. *See, e.g., Guan Gao Co. v. Acco Brands Corp.,* No. 06 Civ. 8208, 2007 WL 747795, at *3 (S.D.N.Y. Mar. 9, 2007) ("[T]he fact that the trip from Israel to Illinois may be slightly longer or more expensive than the trip to New York is of limited materiality."); *Deshoulieres, S.A. v. Cuthbertson Imports, Inc.,* No. 06 Civ. 5163, 2006 WL 2849818, at *3 (S.D.N.Y. 2006) ("For Defendant ... a Connecticut corporation, Connecticut is clearly more convenient. For Plaintiff ... it [matters] little whether it litigates in New York or Connecticut, as both are equally inconvenient from France.... [C]ourts have accorded 'little weight' to the convenience of plaintiffs' attorneys. The balance of interests here strongly favors Connecticut.").

**3.    Convenience Of Witnesses.**

Michigan is a far more convenient forum for a majority of the witnesses.  To begin, Dow is a Delaware corporation with its principal place of business in Midland, Michigan. (Reinhard Cplt. ¶ 10; Stuart Aff. ¶ 6.)  The two Dow employees mentioned by name in Reinhard's complaint, defendant Liveris and Dow spokesperson Chris Huntley, both live and work in Michigan.  In addition, virtually every potential Dow employee witness works at Dow's headquarters in Michigan.  (Stuart Aff. ¶¶ 7-12.)  This list of potential employee witnesses includes:

- Dow's chief executive officer, Andrew Liveris, who is named as an individual defendant in this action based on the allegedly defamatory statements he made in the course of his employment concerning the circumstances leading to plaintiff's firing;

- Dow public affairs personnel, who were involved in public statements by the company and thus whose testimony may prove relevant to plaintiff's defamation claim;

- Dow human resources personnel, whose testimony may be relevant to the executive compensation and benefits claims;

- Dow's finance and mergers and acquisitions teams, whose testimony may be relevant to prove that any discussions plaintiff had with third parties regarding transactions involving Dow were neither authorized nor accepted practice; and

- Reinhard's assistant, whose testimony may be relevant to Reinhard's international travel, including any travel for the purposes of engaging in unauthorized discussions with third parties involving Dow.

(*See id.*)  This "major factor" thus weighs heavily in favor of transfer.  *Frasca v. Yaw,*  787 F. Supp. 327, 331 (E.D.N.Y. 1992) (holding that this factor clearly favors transfer when many of the potential witnesses are in another District).[3]

---

[3]    Additional third-party witnesses may be relevant to Dow's defenses to Reinhard's claims, including witnesses relevant to the bases for the termination of Reinhard's employment.  Certain of these witnesses — such as Europe-based bankers and Middle Eastern investors (*see* Dow Am. Cplt. ¶ 37) — to the best of Dow's knowledge, are located in neither New York nor Michigan and thus do not factor into the forum analysis.  One third-party witness — a senior executive from the financial institution who confirmed Reinhard's wrongdoing

(Continued...)

4.      **Location Of Relevant Documents And The Relative Ease of Proof.**

The location of relevant documentary evidence also favors the Michigan forum. All of Dow's relevant documents are likely in Michigan. (Stuart Aff. ¶ 13.) These documents would likely include: Reinhard's documents, e-mails, and other electronic files stored at Dow; the documents, e-mails, and other electronic files of the potential Dow employee witnesses listed above; minutes from the Board of Directors meeting where the decision to terminate Reinhard was reviewed with the Board; and drafts of any press releases regarding Reinhard's firing. By contrast, there are likely few, if any, relevant documents located in this District given that Reinhard neither lived nor worked here. Although "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents," *see American Steamship Owners Mut. Protection and Indem. Ass'n v. Lafarge North America, Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (citing *Aerotel Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)), this factor nonetheless should hold at least some significance here given the stark contrast between the relevant evidence in Michigan as compared to New York.

5.      **Forum's Familiarity With The Governing Law.**

Although an extensive choice of law analysis is not appropriate at this juncture, it appears that Michigan law, rather than New York law, will be more relevant to Reinhard's claims given, for example, that the alleged agreements at issue would have been entered in Michigan. Similarly, any counterclaims by Dow, such as the breach of fiduciary duty claim it asserted in its Michigan action, would likely be governed by Delaware law. Thus, this Court would be applying the law of foreign jurisdictions when hearing this matter.

6.      **Trial Efficiency And The Interests Of Justice.**

Efficiency and the interests of justice favor transfer to Michigan. First, Michigan has more of an interest in this dispute than New York as the dispute involves a Michigan-based

---

to Dow (*see* Dow Am. Cplt. ¶ 37) — may work in New York, but the convenience to that single witness does not outweigh the convenience of the numerous other witnesses located in Michigan.

employer and a member of its Board of Directors. Second, this lawsuit is based on the same events that are the basis for Dow's first-filed suit in Michigan, and thus "[t]he interest of judicial economy will ... be served, and the possibility of inconsistent decisions avoided, by the same court hearing both cases." *Columbia Pictures Indus., Inc. v. Fung*, 447 F. Supp. 2d 306, 310 (S.D.N.Y. 2006); *see also Williams v. City of New York,* No. 03 Civ. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) ("[E]xistence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative.").

### 7.    Relative Means Of The Parties.

The relative means of the parties factor merits no weight because Reinhard cannot show — as he must — that litigating this action in Michigan would impose an undue burden on him. *See Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) ("[N]o showing has been made that litigating this action in California would impose an undue hardship on the plaintiff. Accordingly, this factor weighs neutrally in the overall analysis."). As a court in this District recently summarized, "[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *American Eagle Outfitters, Inc.*, 457 F. Supp. 2d at 478 (internal citation omitted). That showing cannot be made here. Although Dow's resources are no doubt greater than those of Reinhard, Reinhard is an individual of substantial means, who earned a significant salary as Dow's former Chief Financial Officer and, as reflected in public filings, holds Dow stock worth approximately $14 million. (*See* The Dow Chemical Company 2007 Proxy Statement, *available at* http://www.dow.com/financial/2007prox/beneficial.htm (relevant section only).) In addition, given that Reinhard does not reside in New York, he will have to travel for these proceedings whether they remain in this District or are transferred to Michigan. *See Beckerman v. Heiman*, No. 05 Civ. 5234, 2006 WL 1663034, at *8 (S.D.N.Y. June 16, 2006) (affording the relative means factor little weight where plaintiff did not live in the forum and was going to have to travel to litigate no matter where the case was sited). Thus, since litigating in

12

Michigan will not be unduly burdensome to Reinhard and Reinhard will have to travel anyway to litigate in New York, this factor is neutral with respect to the transfer analysis.

> **8.    Availability Of Process To Compel Attendance Of Unwilling Witnesses.**

As noted above, *see supra* note 3, the bulk of possible third party witnesses are overseas and beyond the subpoena power of either this Court or the Michigan Court. Although one financial institution witness does work in New York and hence could be beyond the subpoena power of the Michigan court, this factor is not controlling where there has been no suggestion that non-party witnesses could not or would not appear at trial. *See, e.g., First Nat'l Bank v. Nanz, Inc.*, 437 F. Supp. 184, 189 (S.D.N.Y. 1975). Similarly, certain of Dow's bankers, attorneys, or other advisors may be present in New York rather than Michigan. The relevance of the testimony of any of these individuals in this proceeding is uncertain at this early stage, and it cannot be shown that these individuals — with whom Dow has professional relationships — would not travel to Michigan to testify even in the absence of compulsory process. In addition, Reinhard cannot rely on the presence in this District of reporters who heard the allegedly defamatory statements from Dow. The core issues on Reinhard's defamation claim will be the truth of Dow's statements and whether they are actionable — issues unrelated to the transmission of those statements to New York reporters, who accordingly will not be necessary witnesses.

Most importantly, courts have noted that, in the context of Section 1404(a) transfers, the availability of process does not "tip the balance" with regard to the choice of forum, particularly where the testimony of such witnesses may be obtained by videotape or deposition. *Dealtime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000); *see also Novak v. Tucows, Inc.*, No. 06-1909, 2007 WL 922306, at *9 (E.D.N.Y. Mar. 26, 2007) (noting that "there is no reason to believe that such alternatives to live testimony are not available"). This factor is also neutral as between the forums.

13

9.    **Plaintiff's Choice Of Forum.**

Although a plaintiff's choice of forum is ordinarily entitled to some deference, the case law is clear that a plaintiff's choice of forum is accorded less weight where, as here, the forum is "neither the [plaintiff's] home nor the place where the operative facts of the action occurred." *Saccoccio*, No. 06 Civ. 14351, 2007 WL 1334970, at *2; *see also Hill v. Golden Corral Corp.,* No. 98-CV-7872, 1999 WL 342251, at *3 (E.D.N.Y. May 21, 1999).

In addition, courts in this Circuit have also declined to grant a plaintiff's choice of forum any deference where, as here, there is an earlier-filed action that involves related parties and issues. *See 800-Flowers, Inc.*, 860 F. Supp. at 135. Indeed, courts have stated in such first-filed situations that "there is a strong presumption in favor of the forum chosen by the original plaintiff." *Id*. This application of the first-filed rule makes perfect sense: "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968). Accordingly, to the extent the choice of forum factor has any weight, it favors Michigan, the forum chosen by Dow in its first-filed action.

> \*          \*          \*          \*          \*

In sum, two-thirds of the factors considered in the transfer analysis — the locus of the operative facts; the convenience of the parties; the convenience of witnesses; the location of relevant documents and the relative ease of proof; a forum's familiarity with the governing law; and trial efficiency and the interests of justice — strongly favor the Eastern District of Michigan, Northern Division, over this District. The three remaining factors — the relative means of the parties; the availability of process to compel attendance of unwilling witnesses; and the weight accorded plaintiff's choice of forum — are neutral in the analysis. Coupled with the fact that considerations of efficiency and fairness require that this action be heard together with Dow's

first-filed Michigan action, the transfer factors demonstrate that this action should be transferred to the Eastern District of Michigan.

## CONCLUSION

For the foregoing reasons, Dow respectfully requests that this Court transfer this action to the Eastern District of Michigan, Northern Division, pursuant to 28 U.S.C. § 1404(a).


Dated:  May 29, 2007

_____s/_____
David M. Bernick, P.C.
Peter D. Doyle (PD 1735)

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Attorneys for Defendants
THE DOW CHEMICAL COMPANY