# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------x

ROMEO KREINBERG,

                   Plaintiff,

   - against -

THE DOW CHEMICAL COMPANY and ANDREW N.
LIVERIS,

                 Defendants.

----------------------------------------------------------x

Index No. 07 / 601540

Date Purchased:

Plaintiff designates New York
County as the place of trial

**SUMMONS**

The basis of venue is that no
party resides in the State.

NEW YORK
COUNTY CLERK'S OFFICE

(MAY - 8 2007)

NOT COMPARED
WITH COPY FILE

To the Above Named Defendants:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to

serve a notice of appearance, on the Plaintiff's Attorney within 20 days after the service

of this summons, exclusive of the day of service (or within 30 days after service is

complete if this summons is not personally delivered to you within the State of New

York); and in case of your failure to appear or answer, judgment will be taken against

you by default for the relief demanded in the complaint.

Dated: New York, New York
      May 8, 2007

ARKIN KAPLAN RICE LLP

By: _____
    Stanley S. Arkin
    Barrett N. Prinz
    Lisa Solbakken

590 Madison Avenue
New York, New York 10022
(212) 333-0200 (telephone)
(212) 333-2350 (facsimile)

*Attorneys for Plaintiff*
*Romeo Kreinberg*

Defendants' Addresses

The Dow Chemical Company
2030 Dow Center
Midland, MI 48674

Registered Agent:
CT Corporation System
111 Eighth Avenue
New York, NY 10011

Andrew Liveris
Chief Executive Officer, President and Chairman
The Dow Chemical Company
2030 Dow Center
Midland, MI 48674

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

ROMEO KREINBERG,                                     :    **COMPLAINT**
                                                     :
                          Plaintiff,                 :    Index No.
                                                     :
         - against -                                 :
                                                     :    Plaintiff designates New York
THE DOW CHEMICAL COMPANY and ANDREW N.               :    County as the place of trial.
LIVERIS,                                             :
                                                     :
                          Defendants.                :
                                                     :

---------------------------------------------------------------x

Plaintiff Romeo Kreinberg ("Kreinberg"), by his attorneys Arkin Kaplan Rice LLP, for

his complaint against Defendants Andrew N. Liveris ("Liveris") and The Dow Chemical

Company ("Dow" or the "Company"), alleges as follows:

### NATURE OF THE ACTION

1.      This case arises from Defendants' pretextual termination of Romeo Kreinberg, a

distinguished executive and 30-year employee of Dow, and the defamation campaign used to

conceal the reasons behind it.  In a scheme driven by Defendant Andrew Liveris, who viewed

Kreinberg as a threat to his corporate control, Kreinberg was falsely accused of grave disloyalty

to a company he had served faithfully his entire professional life.  Defendants' defamatory

statements attacked Kreinberg's character and integrity as a businessman, causing serious harm

to a reputation and career previously notable only for admirable achievement and the respect

Kreinberg earned in the international business community.

2.      The events leading to Kreinberg's defamation began on April 8, 2007, when a

British tabloid reported that J.P. Morgan was advising a consortium of Middle Eastern investors

who targeted Dow for a buy-out. The next day, at Liveris' request, J.P. Morgan's CEO Jamie Dimon flew from his New York offices to Midland, Michigan to meet Liveris at the Dow Club.

3.    During dinner, Liveris asked Dimon if J.P. Morgan — which maintains a long-standing relationship with Dow — was aware of any plans or discussions relating to an acquisition of some or all of Dow's business, and if so, whether Dow employees were involved. Dimon responded to Liveris' inquiry the next day, on April 10, 2007.

4.    On April 12, less than 48 hours later, Kreinberg was called to a meeting attended by Liveris, Dow's General Counsel Charles Kalil, Board members Arnold Allemang and Paul Stern, and Martin Lipton of the New York law firm Wachtell Lipton Rosen & Katz.

5.    When Kreinberg arrived, Liveris accused him of having participated in a "conspiracy" with investment banks and foreign governments to sell Dow. Kreinberg was then terminated, having been refused the opportunity to challenge the charge against him or review the evidence purportedly supporting it. Defendants dispensed with the 30-year career of a distinguished and devoted executive in just over five minutes.

6.    Immediately thereafter Dow issued a press release announcing Kreinberg's termination. The press release stated that Kreinberg was involved in "highly inappropriate" and "unauthorized discussions with third parties about the potential acquisition of the Company." The press release further stated these discussions constituted "a clear violation of Dow's Code of Business Conduct." Press Release, The Dow Chemical Company, The Dow Chemical Company Announces Executive Terminations (Apr. 12, 2007) (attached hereto as Exhibit A).

7.    Defendants repeated these and similar allegations over the next several weeks, claiming to have "irrefutable" evidence demonstrating Kreinberg had shopped the Company, which it received from a "highly credible person" on April 10, two days before Kreinberg was

2

fired.

8.      As a result of these and other falsehoods published by Defendants, Kreinberg was branded a "traitor" to Dow in publications around the globe.

9.      Defendants' statements about Kreinberg and the reasons for his termination were false and defamatory, and Defendants knew them to be false and defamatory at the time they were made.

10.      Kreinberg has not "shopped" Dow or otherwise participated in a conspiracy to sell or acquire the Company, in whole or in part. Likewise, Kreinberg has not engaged in "highly inappropriate" or "unauthorized discussions" in violation of Dow's Code of Business Conduct.

11.      Defendants have no basis to state or imply otherwise. To the contrary, on information and belief, the "source" to which Defendants have referred is Jamie Dimon and/or J.P. Morgan, who informed Liveris that Kreinberg's interaction with J.P. Morgan was unstructured and informal, and no different from those typically held among bankers and industry businessmen. Dimon never advised Liveris that Kreinberg was part of a conspiracy to sell the Company, or that Kreinberg otherwise identified an intention or suggested he had the authority to sell Dow. Quite the opposite, J.P. Morgan representatives were told by Kreinberg that he had no such authority.

12.      Nonetheless, Defendants falsely and publicly accused Kreinberg of having breached his duties to the Company, without having conducted any reasonable or fair investigation or granting him the opportunity to controvert this claim.

13.      Defendants' intentional defamation damaged the reputation and career of an executive who has served Dow faithfully. As a result, Defendants have caused lasting and profound harm to Kreinberg and to Company shareholders, who will suffer the loss of a loyal

3

and valued manager's services.

## PARTIES

14.    Plaintiff Romeo Kreinberg is a permanent U.S. resident who resides in Michigan and Florida.

15.    Defendant The Dow Chemical Company ("Dow") is a Delaware Corporation that at all times relevant to this action did business in the State of New York.  Dow maintains its principal place of business at 2030 Dow Center, Midland, Michigan 48674.

16.    Defendant Andrew N. Liveris is, and at all times relevant to this action was, Chief Executive Officer, President, and Chairman of the Board of The Dow Chemical Company.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over Defendants pursuant to CPLR 301.

18.    Venue in this Court is proper pursuant to CPLR 503(a) and (c).

## KREINBERG'S BACKGROUND

19.    Kreinberg was born in Croatia and raised in Argentina.  He received an undergraduate degree from the University of Buenos Aires in 1974.

20.    In 1975, Kreinberg moved to Germany to accept a position in marketing and development with a plastic and steel parts manufacturer in the automotive industry.

## KREINBERG IS RECRUITED BY DOW

21.    In 1977, Kreinberg was recruited by Dow Germany as a sales representative in the extruded polystyrene foam division.

22.    By 1982, after several promotions, Kreinberg moved to Switzerland to manage marketing strategy development for specialty polyurethane products produced by Dow's European, Middle Eastern and African operations.  During Kreinberg's tenure, division business

4

more than doubled, from $40 million to over $100 million.

23.    In 1985 Dow again asked Kreinberg to relocate, this time to Italy, to become the Company's regional marketing manager. By 1992, Kreinberg was general manager of Dow Italy and vice president of Dow Europe. In this capacity, Kreinberg helped negotiate the purchase of Buna, an East German petrochemical complex, which has proved to be one of Dow's most successful business deals.

24.    Kreinberg was promoted to global vice president for polyethylene in 1995. Under his leadership, this segment of Dow's business doubled in size and accounted for more than $3 billion in operational cash flow and $1 billion of the Company's net profit.

25.    Recognizing his contributions to the Company, in 2000 Dow promoted Kreinberg to business group president for polyolefins and elastomers. Kreinberg continued a proven record of increasing sales, gaining new customers and improving productivity while running this $6.1 billion portfolio.

26.    In 2003, Dow appointed Kreinberg a member of the Office of the Chief Executive and promoted him to senior vice president for the plastics business portfolio. Kreinberg was charged with leading a business group of over 9,800 employees in 47 countries, which generated $17 billion in net revenue.

27.    In 2005, Kreinberg was elevated to executive vice president of Dow's performance plastics and chemical business portfolio. In this capacity, Kreinberg lead 15,000 employees in 145 countries generating $21.8 billion, or 44% the Company's total sales revenue.

28.    In addition to these operational responsibilities, Kreinberg was appointed director at Dow Corning and the Oman Petrochemical Industries Company ("OPIC"), a joint venture between Dow and the country of Oman.

5

29. Kreinberg's efforts on the Company's behalf were recently again recognized when, on March 13, 2007, he was named to a five-person executive leadership committee focused on defining the Company's strategic direction, prioritizing its investment agenda and setting its financial plans.

30. In his more than 30 years of dedicated service to the Company, Kreinberg moved his family to five different countries to accept increasingly more prestigious positions and assignments at Dow. Not once did Kreinberg refuse or fail to effectively execute a new challenge posed by his employer.

## LIVERIS TAKES CONTROL OF DOW

31. In 2000, Dow CEO William Stavropolous announced his resignation, and the Company selected Michael Parker as his successor.

32. Two years later, after several quarters of negative cash flow, the Dow Board removed Parker. It reinstated Stavropolous, then Chairman of Dow's Board, as interim-CEO until a permanent replacement was identified.

33. Kreinberg was one of a number of candidates who met with Board members to discuss the Chief Executive position; however, soon after Stavropolous' installation, Liveris was ushered into the position of President and Chief Operating Officer. Thereafter, Liveris ascended to the positions of CEO and Chairman.

34. As CEO, Liveris was required to work closely with Kreinberg, who remained a well-respected senior executive. Kreinberg created and maintained many of Dow's largest and most lucrative customer relationships throughout Europe and the Middle East. This successful track record continued undiminished during Liveris' tenure.

35. Indeed, in February 2007, two months prior to his termination, Kreinberg received

6

an e-mail from Director Arnold Allemang praising his "passionate leadership" and
anticipating "future profitability and growth" as a result of Kreinberg's work.

36.    Despite this performance, or perhaps because of it, Liveris viewed Kreinberg as a
threat. The loyalty Kreinberg garnered from his division, one of Dow's largest and most
successful, coupled with Kreinberg's willingness to challenge the opinions held by his CEO, was
anathema to Liveris and his management style.

37.    In light of Kreinberg's achievements, however, Liveris had no basis to terminate
Kreinberg for a failure to perform his job responsibilities. The CEO needed a different angle or
hook supporting his ouster of the well-regarded executive.

38.    By letter dated March 23, 2007, just days after Kreinberg was appointed to the
Company's Executive Committee, Liveris threatened to fire him within three months if he failed
to adjust his "negative body language" and "attitude." If Kreinberg refused, Liveris stated, his
"links with Dow" would be severed.

39.    Within three weeks of issuing this ultimatum, Liveris manufactured a more
expedient basis to follow through on his threat.

### LIVERIS MEETS WITH J.P. MORGAN

40.    On April 8, 2007, a British tabloid reported that J.P. Morgan was advising "a
consortium of Middle Eastern investors and American buyout firms" that were "[placing the]
finishing touches [on] an approach for U.S. giant Dow Chemical." Lawrie Holmes, *U.S. Giant
on Verge of $50bn Record Buyout*, SUNDAY EXPRESS, Apr. 8, 2007, at 11.

41.    The next day, Dow's management responded to the buy-out rumor, issuing a press
release advising shareholders that the Company was not the subject of an offer. Press Release,
The Dow Chemical Company, Dow Voices Support for Company Strategy (Apr. 9, 2007).

7

42.    At Liveris' behest, Jamie Dimon, J.P. Morgan's CEO, met him at the Dow Club for dinner that evening. Liveris asked Dimon if J.P. Morgan was aware of any plans or discussions relating to the acquisition of some or all of Dow's business, and whether Dow employees were involved.

43.    On information and belief, Dimon reported back to Liveris the next day. As discussed below, Defendants distorted and misrepresented the substance of this report to support the malicious defamation that followed it.

## THE TERMINATION

44.    On April 12, 2007, two days after Liveris spoke with Dimon, Kreinberg was called to a 7 a.m. meeting attended by Liveris, Dow's General Counsel Charles Kalil, Board members Arnold Allemang and Paul Stern, and Martin Lipton of the New York law firm Wachtell Lipton Rosen & Katz. On information and belief, Lipton had been retained by Dow to develop a "poison pill" to ward off takeover attempts.

45.    During this meeting, Liveris accused Kreinberg of "conspiring" with investment banks and foreign governments to sell Dow, adding that this alleged conduct was a breach of Kreinberg's duties to the Company. Kreinberg asked to see the evidence purportedly supporting these allegations, a request that the Company denied.

46.    Instead, General Counsel Kalil advised Kreinberg, who had not been told the purpose of the meeting or to have his counsel present, that he should quietly resign in favor of a "benevolent" severance from the Company.

47.    Kreinberg declined, and was summarily terminated.

8

## THE DEFAMATION

48.     Within hours Dow issued a press release that remains on its website to this day, stating that Kreinberg engaged in "highly inappropriate" and "unauthorized discussions with third parties about the potential acquisition of the Company" constituting "a clear violation of Dow's Code of Business Conduct." (*See* Exh. A.)

49.     Liveris added that he was "greatly saddened by the disrespect shown by [Kreinberg]," but that Dow's case was "absolutely watertight," and Liveris had "not a minute of doubt" that the Company took "absolutely appropriate action" in rapidly firing him. *Id.*; Jack Kaskey, *Dow Case on Ex-Executives Is Watertight, Liveris Says*, (Bloomberg), Apr. 18, 2007, http://www.bloomberg.com/apps/news?pid=newsarchive&sid=a6wJuMkDpXTo

50.     Liveris thereafter worked tirelessly to convey confidence in the case against Kreinberg and the propriety of the Company's decision, stating that Dow "had irrefutable evidence [of his] inappropriate behavior." Francesco Guerra, *Dow Chief Defends Dismissal Decision*, FIN. TIMES, Apr. 18, 2007, at 28.   When asked if he was satisfied with the "the quality of [such] evidence," Liveris unequivocally stated: "Capital Y, capital E, capital S. Yes. Why would we act in any other way? We were absolutely clear." *Id.*

51.     Dow, too, stated that Kreinberg had shopped the Company, noting that it received this information "from a 'highly credible person' on April 10, two days before [Kreinberg was] fired." Jack Kaskey, *Dow Case on Ex-Executives Is Watertight, Liveris Says*, (Bloomberg), Apr. 18, 2007, *supra*. According to Dow, "[i]n terms of . . . [Kreinberg's] activities, . . . [he] had been involved in a period of several months with various parties in a number of different locations to discuss the potential acquisition of Dow Chemical Company." *Fired Dow Chemical Advisor Denies Wrongdoing*, Manufacturing.Net (Apr. 17, 2007),

9

http://www.manufacturing.net/article.aspx?id=139741.

52.    Defendants' false and defamatory statements about Kreinberg generated additional national and international press. Kreinberg was branded a corporate "traitor" to the company he served for over 30 years. *See, e.g.,* Evelyn M. Rusli, *Dow Chemical Ousts Traitors,* FORBES.COM, Apr. 12, 2007, http://www.forbes.com/markets/2007/04/12/dow-chemical-fires-markets-equity-cx_er_0412markets04.html. Liveris himself acknowledged the magnitude of coverage, glibly stating: "Books will be written about it." *Face Value: The Chief Executive's Dilemma, Is Andrew Liveris of Dow Chemical Right to Resist the Temptations of Private Equity?,* 950 THE ECONOMIST 86, Apr. 26, 2007, *supra.*

53.    The public statements made by Defendants concerning Kreinberg and the basis for his termination are false, and were known by Defendants to be false at the time they were made.

54.    Kreinberg did not shop the Company. Nor did Kreinberg, who was a senior executive required to interact with a broad range of industry players in the United States and abroad in the ordinary course, participate in unauthorized meetings outside the purview of his responsibility or otherwise violate Dow's Code of Business Conduct.

55.    Defendants' statements to the contrary are false, without basis, and defamatory. Indeed, Defendants -- who admit no investigation was undertaken prior to Kreinberg's public termination -- "simply [made] contact with **one** individual" who purportedly provided information supporting their precipitous conduct. *See* Paul Wyche, *Pair Stood to Benefit from Sale,* SAGINAW NEWS, Apr. 13, 2007, 1A (emphasis added).

56.    On information and belief, this "one individual" is Jamie Dimon of J.P. Morgan.

57.    Dimon, however, never told Defendants that Kreinberg participated in a plan,

expressed an intention, or otherwise stated he had authority to sell the Company. To the contrary, on information and belief, Dimon advised Liveris that his investment bank has had informal contact with Dow employees, including Kreinberg, among others, but that these interactions were of the nature and quality of those commonly held among bankers and industry businessmen. Dimon further informed Liveris that these Dow employees told J.P. Morgan that they had no authority to sell the Company. Finally, Dimon requested that Liveris fully advise Dow's Board of his report, cautioning that Liveris should not jump to any conclusions or take any further action on these issues without careful thought and investigation.

58.    Nonetheless, Defendants intentionally distorted and misrepresented to Dow colleagues and the media the statements made by Dimon and/or J.P. Morgan regarding Kreinberg and his role in the alleged buy-out conspiracy.

59.    Defendants did this to manufacture a pretext for Kreinberg's termination, cutting short the employment of a distinguished and devoted 30-year employee.

60.    Defendants' malicious, false and defamatory statements have cast Kreinberg as a deceitful businessman who is without professional integrity, and have caused incalculable damage to Kreinberg's reputation and standing in the business community. Kreinberg has additionally suffered pecuniary loss, including his salary, benefits, and vested and unvested securities.

## FIRST CAUSE OF ACTION

### (Defamation *per se*, Defamation against Liveris)

61.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62.    Liveris published, or caused to be published, false and derogatory statements regarding Kreinberg's profession, trade and business.

11

63. Liveris' defamatory statements were published to all parties who reviewed Dow's press releases and the news reports in which Liveris was quoted, including, but not limited to, Dow employees, members of the media and the public at large.

64. Liveris was aware that the publication of his false statements contained in Dow's press releases and internal memoranda would be widely reported in the international media and would cause damage to Kreinberg.

65. Liveris acted with malice and caused statements to be published that he knew to be false.

66. As a result of Liveris' defamatory statements, Kreinberg suffered, and continues to suffer, harm to his reputation and financial interests.

67. By reason of the foregoing, Liveris is liable for defamation *per se*, in an amount not less than $100 million.

68. Because of the willful, wanton and intentional nature of Defendant's conduct, Defendant is also liable for punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Defamation *per se*, Defamation against Dow)

69. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

70. Dow, through its corporate spokesman, senior executives and internet website, published, or caused to be published, false and derogatory statements regarding Kreinberg's profession, trade and business.

71. Dow's defamatory statements were published to all parties who reviewed Dow's press releases and the news reports in which Dow was quoted, including, but not limited to, Dow employees, members of the media and the public at large.

12

72.    Dow was aware that its publication of the false statements contained in these press releases and news reports would be widely reported in the international media and would cause damage to Kreinberg.

73.    Dow acted with malice, both presumed and actual, and published statements that it knew to be false.

74.    As a result of Defendant's defamatory statements, Kreinberg suffered, and continues to suffer, harm to his reputation and financial interests.

75.    By reason of the foregoing, Dow is liable for defamation *per se*, in an amount not less than $100 million.

76.    Because of the willful, wanton and intentional nature of Defendant's conduct, Defendant is also liable for punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### (Defamation *per se*, Compelled Self-Publication Defamation against Liveris)

77.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

78.    Liveris published, or caused to be published, false and defamatory statements regarding Kreinberg and the basis for his termination.

79.    Liveris also falsely informed Kreinberg that he was terminated as a result of alleged disloyalty and a breach of his obligations and job duties to Dow.

80.    As a result of Liveris' defamatory statements, Kreinberg has been, and will continue to be, forced to defame himself, as he is required to repeat Liveris' false and derogatory allegations regarding his job performance to third parties.

81.    If asked to explain the circumstances of his termination, Kreinberg has no option

13

but to inform third parties, including future potential employers, that he was accused of a serious ethical breach that resulted in his termination.

82.     Liveris knew, or should have known, that Kreinberg would be compelled to republish the defamatory statements.

83.     Liveris intentionally manufactured false allegations against Kreinberg to further his personal goal of removing all challengers to his authority at Dow and out of personal animus towards Kreinberg.

84.     As a result of Liveris' defamatory statements, Kreinberg has suffered, and continues to suffer, harm to his professional reputation and financial interests.

85.     By reason of the foregoing, the Liveris is liable for defamation *per se*, compelled self-publication defamation, in an amount not less than $100 million, the exact amount to be proven at trial.

86.     Because of the willful, wanton and intentional nature of Liveris' conduct, Liveris is also liable for punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Defamation *per se*, Compelled Self-Publication Defamation against Dow)

87.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

88.     Dow, its corporate spokesman and its employees published, or caused to be published, defamatory statements regarding Kreinberg.

89.     Dow falsely informed Kreinberg that he was terminated as a result of alleged disloyalty and a breach of his obligations and job duties to Dow. As a result, Kreinberg has been, and will continue to be, forced to defame himself, as he is required to repeat Defendants'

14

false and derogatory allegations regarding his job performance to third parties.

90.     Dow knew, or should have known, that Kreinberg would be compelled to republish the defamatory statements.

91.     As a result of Defendant's defamatory statements, Kreinberg has suffered, and continues to suffer, harm to his professional reputation and financial interests.

92.     By reason of the foregoing, the Defendant is liable for defamation *per se*, compelled self-publication defamation, in an amount not less than $100 million, the exact amount to be proven at trial.

93.     Because of the willful, wanton and intentional nature of Defendant's conduct, Defendant is also liable for punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### (Tortious Interference with Contract against Dow and Liveris)

94.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

95.     Plaintiff maintained a contract relating to his pension with Dow Germany Ltd. & Co. OHG and/or Dow Deutschland GmbH & Co. OHG Betriebliche Versorgungsregelung.

96.     Defendants Dow and Liveris were aware of this contract.

97.     Dow and Liveris willfully, wantonly, recklessly and/or negligently induced the termination of this contract by misrepresenting and distorting information received from J.P. Morgan about Kreinberg and conveying these misrepresentations and distortions to others at Dow and the public at large.

98.     Dow and Liveris also willfully, wantonly, recklessly and/or negligently induced the termination of this contract by publishing and/or causing to be published false and defamatory statements about Kreinberg.

15

99.    Dow Germany Ltd & Co. OHG and/or Dow Deutschland GmbH & Co. OHG and/or Betriebliche Versorgungsregelung terminated this contract as a result of Defendants' conduct.

100.    There exists no justification for Defendants' actions.

101.    But for Defendants' actions, Kreinberg's contract would not have been terminated.

102.    Because of Liveris' conduct, Kreinberg suffered both reputational loss and pecuniary loss in the form of income, vested and unvested securities and benefits.

103.    By reason of the foregoing, the Liveris is liable in an amount not less than $100 million.

### SIXTH CAUSE OF ACTION

**(Tortious Interference with Prospective Business Advantage against Liveris)**

104.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

105.    Plaintiff and Dow maintained an ongoing business relationship for over thirty years.

106.    Liveris was aware of this relationship, and maliciously, willfully, wantonly and with reckless disregard of Kreinberg's rights induced the termination of this ongoing relationship by misrepresenting and distorting information received from J.P. Morgan about Kreinberg and conveying these misrepresentations and distortions to others at Dow and the public at large.

107.    Liveris also maliciously, willfully, wantonly and in reckless disregard of Kreinberg's rights induced the termination of this ongoing relationship by publishing or causing to be published false and defamatory statements about Kreinberg.

108.    There exists no justification for Liveris' actions, which were undertaken outside

16

the scope of his employment, and for his own personal and professional gratification and benefit.

109.     But for Liveris' actions, Kreinberg would continue to be employed with Dow today.

110.     Because of Liveris' conduct, Kreinberg suffered both reputational loss and pecuniary loss in the form of income, vested and unvested securities and benefits.

111.     By reason of the foregoing, the Liveris is liable in an amount not less than $100 million.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendants as follows:

(i)     As to the First Cause of Action: for damages in an amount to be proven, but not less than $100 million, plus punitive damages;

(ii)     As to the Second Cause of Action: for damages in an amount to be proven, but not less than $100 million, plus punitive damages;

(iii)     As to the Third Cause of Action: for damages in an amount to be proven, but not less than $100 million, plus punitive damages;

(iv)     As to the Fourth Cause of Action: for damages in an amount to be proven, but not less than $100 million, plus punitive damages;

(v)     As to the Fifth Cause of Action: for damages in an amount to be proven, but not less than $100 million, plus punitive damages;

(vi)     As to the Sixth Cause of Action: for damages in an amount to be proven, but not less than $100 million, plus punitive damages;

(vii)     As to all Causes of Action:  for an award of reasonable attorneys' fees and costs

17

of suit for bringing this lawsuit; and

(viii)   As to All Causes of Action: for such other and further relief as the Court deems

just and proper.

Dated: New York, New York
       May 8, 2007

Respectfully submitted,

ARKIN KAPLAN RICE LLP

By: _____
    Stanley S. Arkin
    Lisa C. Solbakken
    Barrett Prinz

590 Madison Avenue
35th Floor
New York, New York 10022
(212) 333-0200 (telephone)
(212) 333-2350 (facsimile)

*Attorneys for Plaintiff Romeo Kreinberg*

# Exhibit

# A

The Dow Chemical Company Announces Executive Terminations



# News Center

The Dow Chemical Company Announces Executive Terminations

Midland, MI – April 12, 2007

The Dow Chemical Company announced this morning that Pedro Reinhard, a senior advisor and member of the Board of Directors, and Romeo Kreinberg, an officer of the Company, engaged in business activity that was highly inappropriate and a clear violation of Dow's Code of Business Conduct. Reinhard and Kreinberg were involved in unauthorized discussions with third parties about the potential acquisition of the Company.

The Company took swift action: Information about the misconduct was first disclosed to Dow on Tuesday, April 10; the Board of Directors was informed on Wednesday, April 11; and the employees were terminated this morning with full support of the Board.

"The values of integrity and respect for people are at the very core of our Company," said Andrew Liveris, chairman and CEO. "I think I speak for all employees when I say we are greatly saddened by the disrespect shown by our former colleagues. But we will move on to shape our future with an even greater resolve to execute our strategy and deliver value to our shareholders. We will uphold Dow's 110-year history of commitment to the highest standards of integrity, ethical conduct and corporate governance."

**About Dow**

Dow is a diversified chemical company that harnesses the power of innovation, science and technology to constantly improve what is essential to human progress. The Company offers a broad range of products and services to customers in more than 175 countries, helping them to provide everything from fresh water, food and pharmaceuticals to paints, packaging and personal care products. Built on a commitment to its principles of sustainability, Dow has annual sales of $49 billion and employs 43,000 people worldwide. References to "Dow" or the "Company" mean The Dow Chemical Company and its consolidated subsidiaries unless otherwise expressly noted.

**For Editorial Information:**

Chris Huntley
The Dow Chemical Company
989-636-2876

Index No.

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF NEW YORK.

ROMEO KREINBERG,

Plaintiff,

-against-

THE DOW CHEMICAL COMPANY
AND ANDREW N. LIVERIS,

Defendants.

SUMMONS AND COMPLAINT

*ARKIN KAPLAN RICE LLP*

*Attorneys for*     Plaintiff

590 Madison Avenue
New York, N.Y. 10022
Telephone 212-333-0200