# EXHIBIT J

88 09 7230

File No. 33-21748

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

## Form S-8
### REGISTRATION STATEMENT
under
### THE SECURITIES ACT OF 1933

RECD S.E.C.

MAY 1 6 1988

ITEM 30

# THE DOW CHEMICAL COMPANY

(a Delaware corporation)
Executive Offices - 2030 Willard H. Dow Center
Midland, Michigan 48674

(Name, state of incorporation and address of principal executive office of issuer)
IRS Employer Identification No. 38-1285128

### THE DOW CHEMICAL COMPANY
### 1988 AWARD AND OPTION PLAN

(Full title of the plan)

RECEIVED

MAY 1 6 1988

Bechtel Information Services
Gaithersburg, Maryland

ENRIQUE C. FALLA
Financial Vice President
THE DOW CHEMICAL COMPANY
2030 Willard H. Dow Center
Midland, Michigan 48674

(Name and address of agent for service)
Telephone: (517) 636-1000

### CALCULATION OF REGISTRATION FEE

| Title of securities to be registered | Amount to be registered | Proposed maximum offering price per share | Proposed maximum aggregate offering price | Amount of registration fee |
|---|---|---|---|---|
| Common Stock, par value $2.50 | 10,000,000 | $80.937* | $809,370,000 | $161,875 |

*Calculated under Rule 457(c) as of 5/9/88.

Total Pages (including exhibits) --

# CROSS REFERENCE SHEET

---

**ITEM**                                          **LOCATION IN PROSPECTUS**

1 . . . . . . . . . Outside front cover page.

2 . . . . . . . . . Inside front cover page.

3 . . . . . . . . . *

4(a) . . . . . . Outside front cover page.

  (b) . . . . . . Under General Information and Principal Features of the Plan.

  (c) . . . . . . Under General Information and Income Tax Status.

  (d) . . . . . . Under General Information.

  (e) . . . . . . Under General Information.

  (f) . . . . . . *

5 . . . . . . . . Outside front page, under General Information and under Principal Features of the Plan.

6 . . . . . . . . Under Principal Features of the Plan.

7(a) . . . . . . Under Principal Features of the Plan.

  (b) . . . . . . Under General Information.

8 . . . . . . . . . *

9(a) . . . . . . *

  (b) . . . . . . Under Principal Features of the Plan.

10 . . . . . . . . Under Principal Features of the Plan and in appendices.

11 . . . . . . . . Under Administration.

12 . . . . . . . . *

13 . . . . . . . . *

14(a) . . . . . . Under Incorporation of Certain Documents by Reference and Description of Dow Capital Stock.

  (b) . . . . . . *

15 . . . . . . . . Under Incorporation of Certain Documents by Reference and Description of Dow Capital Stock.

16 . . . . . . . . *

17 . . . . . . Under Legal Opinion.

18 . . . . . . . Under Indemnification of Directors and Officers.

---

*Omitted because it is inapplicable or the answer is in the negative.

# Preliminary
# Prospectus

---

# 10,000,000 Shares
# The Dow Chemical Company
# Common Stock
# Par Value $2.50 Per Share

---

# The Dow Chemical Company
# 1988 Award & Option Plan

SAVE THIS DOCUMENT FOR YOUR FUTURE REFERENCE. This Prospectus describes and contains the complete text of The Dow Chemical Company 1988 Award and Option Plan. Employees holding exercisable options will be informed of any significant changes in the Plan through supplements to this Prospectus. Current information concerning Dow will regularly be available. Please refer to the material under the captions "Incorporation of Certain Documents By Reference" and "Available Information".

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

The date of this Preliminary Prospectus is May 12, 1988.

## TABLE OF CONTENTS

Incorporation of Certain Documents by Reference ................................................ 1
Available Information ................................................................................ 1
A GENERAL DESCRIPTION OF THE DOW CHEMICAL COMPANY
1988 AWARD AND OPTION PLAN ...................................................................... 2
    General Information ................................................................................ 2
    Principal Features of the Plans ................................................................ 2
        Eligibility ...................................................................................... 2
        Components of the 1988 Plan .............................................................. 3
        Some Common Elements of the 1988 Plan ................................................ 4
        Forfeiture ...................................................................................... 4
        Resales .......................................................................................... 4
    Income Tax Status ................................................................................ 5
    Administration .................................................................................... 6
The Company .......................................................................................... 6
Description of Dow Capital Stock .................................................................. 6
Legal Opinion ........................................................................................ 7
Experts ................................................................................................ 7
Indemnification of Directors and Officers ...................................................... 7
APPENDIX: COMPLETE TEXT OF THE DOW CHEMICAL COMPANY
    1988 AWARD & OPTION PLAN ...................................................................... 8

## INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE

The following documents filed with the Securities and Exchange Commission (the "Commission") are incorporated herein by reference:

(a) Dow's Annual Report on Form 10-K for the fiscal year ended December 31, 1987; and

(b) Dow's definitive proxy statement, dated March 23, 1988, filed pursuant to Section 14 of the Securities Exchange Act of 1934.

All reports and other documents filed by Dow pursuant to Sections 13, 14 and 15(d) of the Securities Exchange Act of 1934, as amended, prior to the filing of a post-effective amendment which indicates that all the securities offered hereby have been sold or which deregisters all securities remaining unsold, shall be deemed to be incorporated by reference herein and to be a part hereof from the date of filing of such reports and documents.

## AVAILABLE INFORMATION

Dow is subject to the informational requirements of the Securities Exchange Act of 1934 and in accordance therewith files reports and other information with the Commission. Information concerning Dow's executive officers and directors, their compensation and options granted to them, the principal holders of its securities and any material interest of such persons in transactions with it, as of particular dates, is set forth in proxy statements distributed to Dow's shareholders and filed with the Commission. Such reports, proxy statements and other information can be inspected and copied at the public reference facilities maintained by the Commission at the office of the Commission at 450 5th Street, N.W., Washington, D.C. 20549 and at the following regional offices of the Commission: New York Regional Office, 26 Federal Plaza, New York, New York 10007; and Chicago Regional Office, Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604. Copies of such materials may also be obtained from the Commission at prescribed rates by addressing written requests for such copies to the Public Reference Section of the Commission, 450 5th Street, N.W., Washington, D.C. 20549. Such reports, proxy statements and other information concerning Dow can also be inspected at the offices of the New York Stock Exchange, the Midwest Stock Exchange and the Pacific Stock Exchange.

A copy of Dow's 1987 Annual Report to Stockholders has been delivered to each employee eligible to subscribe for stock purchases under the 1988-89 Employees' Stock Purchase Plan and an additional copy will be promptly furnished without charge to any such employee upon request. Dow furthermore hereby undertakes to provide without charge to each eligible employee, upon the request of any such employee, a copy of any and all of the documents described above which have been or may be incorporated herein by reference, other than exhibits to such documents (unless such exhibits are specifically incorporated by reference therein). (Requests for such material may be addressed to the Secretary, The Dow Chemical Company, 2030 Willard H. Dow Center, Midland, Michigan 48674.)

> ### A GENERAL DESCRIPTION OF
> ### THE DOW CHEMICAL COMPANY 1988 AWARD AND OPTION PLAN
> ### (THE "PLAN")
> The following is a summary of certain common aspects of the Plan. The Plan will be controlling if there is any conflict between the Plan and this summary.

## GENERAL INFORMATION

On May 12, 1988, the stockholders of the Company at the annual meeting of stockholders approved a resolution authorizing the Board of Directors to put into effect The Dow Chemical Company 1988 Award and Option Plan (herein called the "Plan"). Immediately following said annual meeting, the Board of Directors of the Company passed a resolution adopting the Plan. The full text of the Plan is set forth in the appendix under the caption "The Dow Chemical Company 1988 Award and Option Plan." The Plan empowers the Company from time to time until terminated by action of the Board of Directors to grant to officers and other managerial, administrative or professional employees of the Company and its subsidiaries, awards of Deferred Stock, Restricted Stock, Options, Stock Appreciation Rights, or a combination of them. The Company is hereby offering a maximum of 10,000,000 shares of its Common Stock, par value $2.50 (subject to adjustment for changes in capitalization), to such persons as may be granted awards pursuant to the Plan. Such offer is made upon the terms and conditions contained in the respective agreements entered into with each awardee under the Plan. As of the date of this Prospectus, no award has been granted under the Plan, and no determination has been made as to future recipients of awards under the Plan, but the present intention of the management is that grants will be made to officers and executive, administrative and professional employees of the Company numbering between 1800 and 2300. Under the terms of the 1988 Plan all employee nominees for election as directors of the Company are eligible for awards with the exception of the members of the Compensation Committee. No determination has yet been made as to grants to the eligible nominees.

The purpose of the Plan is "to attract and retain in the employ of the Company and its Subsidiaries and Affiliates people of ability, training and experience by providing such people, in consideration of services performed, an incentive for outstanding performance to the end of furthering the continued growth and profitability of the Company, and to encourage ownership of the Company's stock by such people."

Once each year, each participant receives a print-out showing the participant's current status under the Plan.

The Option and Stock Appreciation Rights components of the Plan are not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). Some provisions of ERISA may be applicable to the Deferred Stock or Restricted Stock components of the Plan, but most provisions are not applicable because of the exemptions provided by Section 201(2) and Section 110 of that act. The Plan is not qualified under Section 401(a) of the Internal Revenue Code.

Under current Federal securities laws (the Securities Act of 1933 and the Securities Exchange Act of 1934), granting Options under the Plan constitutes the offer of securities to employees to whom Options are awarded. Awards of Stock Appreciation Rights, Deferred Stock and Restricted Stock under the Plan may constitute the offer of securities under the Federal securities laws, but such awards do not require any cash payments by employees to whom they are awarded.

## PRINCIPAL FEATURES OF THE PLAN

### Eligibility

Full-time managerial, administrative or professional employees of Dow or any of its Subsidiaries (including such employees who are officers or Directors of Dow) are eligible for selection as Awardees under the Plan. For purposes of the 1988 Plan, a Subsidiary of Dow is defined as "[a]ny business association (including a corporation or a partnership, other than the Company) in an unbroken chain of such associations beginning with the Company if each of the associations other than the last association in the unbroken chain owns equity interests (including stock or partnership interests) possessing 50% or more of the total combined voting power of all classes of equity interests in one of the other associations in such chain." Directors of Dow who are not employees of Dow or a Subsidiary are not eligible for selection as Awardees under the Plan. Furthermore, no one serving on the Compensation Committee of Dow's Board of Directors (which administers the Plan) is eligible for any awards pursuant to the Plan. Also not eligible is any employee who has provided to the Company a written irrevocable election not to be eligible.

It should be noted that the Plan provides that awards may be granted to employees who are foreign nationals or who are employed outside of the United States on terms and conditions which are different from those made to

U.S. citizens employed in the United States and which are specified in the Plan. Such different terms and conditions may be set by the Compensation Committee, when in its judgment they are necessary to further the purpose of the Plan, usually because of the different laws which may be applicable to the foreign national employee or the employee who is employed outside of the United States.

## Components of the 1938 Plan

The 1988 Plan empowers the Company from time to time during the period following its adoption by the stockholders and until terminated by the Board of Directors to grant to officers and other managerial, administrative or professional employees of the Company and its Subsidiaries awards of Deferred Stock, Restricted Stock, Stock Options, or Stock Appreciation Rights, or a combination of them.

The maximum number of shares of the common stock of the Company which will be reserved for award pursuant to the respective components of the 1988 Plan are as follows:

(1) 1% of the outstanding shares of common stock will be reserved each year for the Plan, to be divided among the various Plan components as the Compensation Committee shall determine, except that a maximum of 10,000,000 shares will be reserved for grant as Incentive Stock Options (tax qualified options) during the life of the Plan.

(2) Up to 25% of any year's allocation, if unused, may be carried forward for up to three years.

(3) Up to 25% of the subsequent year's allocation may be borrowed for use in the current year.

Such maximum numbers as applied to the various components of the 1988 Plan are subject to appropriate adjustment in the event of a reorganization, stock split, stock dividend, combination of shares, merger, consolidation, or other recapitalization of the Company. Such numbers, furthermore, shall have no effect on the maximum numbers applicable to similar components granted under prior plans and presently outstanding or committed. Awards under the 1988 Plan may be made available from either newly issued shares or shares reacquired by the Company. The chief features of each of the separate award components of the Plan are described below under their separate headings.

## Options

Under the Option component of the Plan, Awardees of Options will receive the right to purchase a specified number of shares of the common stock of the Company at some time in the future at an option price of not less than the market price of such stock on the date the Option is granted. Shares granted by any Option granted and subsequently terminated for any reason prior to the end of the granting period may be reallocated, unless they shall have been issued under a Stock Appreciation Right (described below) relating to such Options. Shares issued on exercise of Options may be made subject to restrictions imposed by the Compensation Committee.

Each Option may be granted for a period not exceeding ten years. No Option may be exercised for at least one year after the date of grant. Shares purchased upon exercise of an Option must be paid for in full at the time of exercise, either in cash or with currently owned shares ("cashless exercise"). Any Option awarded as an Incentive Stock Option will be in compliance with the requirements of Section 422A of the Internal Revenue Code of 1986 as amended, or any statutory provision which may replace such section.

## Stock Appreciation Rights

Under the Stock Appreciation Rights component of the Plan, Awardees will receive rights which entitle them to receive a payment in cash, Common Stock, Restricted Stock or Deferred Stock as selected by the Committee. These rights are determined by the appreciation in Common Stock. An SAR may be granted in tandem with all or a portion of a related stock option under the Plan ("Tandem SAR"), or may be granted separately ("Freestanding SAR"). A Tandem SAR may be granted either at the time of the grant of the option or at any time thereafter during the term of the option and shall be capable of being exercised only to the extent that the related stock option is capable of being exercised. In no event shall a Freestanding SAR be exercisable within the first six months of its grant, or in the case of a Tandem SAR within the first six months of the grant of the related Option.

The exercise price of a Tandem SAR shall be the option price under the related stock option. The exercise price of a Freestanding SAR shall be not less than 100% of the fair market value of the Common Stock, as determined by the Committee, on the date of grant of the Freestanding SAR.

A Tandem SAR and a Freestanding SAR shall entitle the recipient to receive a payment equal to the excess of the fair market value of the shares of Common Stock covered by the SAR on the date of exercise over the exercise price of the SAR or such lesser amount as determined by the Committee. Such payment may be in cash, in shares of Common Stock, in shares of Deferred Stock, Restricted Stock or any combination, as the Committee shall determine. Upon exercise of a Tandem SAR as to some or all of the shares covered by the grant, the related stock option shall be cancelled automatically to the extent of the number of shares covered by such exercise, and such shares shall no longer be available for grant. Conversely, if the related stock option is exercised as to some or all of the shares covered by the grant, the related Tandem SAR, if any, shall be cancelled automatically to the extent of the number of shares covered by the stock option exercise.

**Deferred Stock**

Under the Deferred Stock component of the 1988 Plan the Company may, in selected cases, credit the account of the Awardee with a given number of shares of Deferred Stock. Deferred Stock under the 1988 Plan is common stock of the Company to be issued to the Awardee in one or more installments beginning at such time as the Committee shall determine. Prior to issuance of shares of Deferred Stock credited to an Awardee he or she will receive from the Company cash payments equivalent to the dividends on the number of shares of Deferred Stock credited to the Awardee's account.

The Plan provides for forfeiture of Deferred Stock for breach of conditions and for modification or acceleration by the Company of the schedule for issuing shares. Delivery of Deferred Stock will be accelerated in the event of a "Change of Control." A "Change of Control" would be deemed to have occurred if any person or group of persons acting in concert became the beneficial owner of 20% or more of the Company's voting stock without the approval of the Board of Directors, in the case of certain changes in the membership of the Board of Directors, or in any situation which would require the reporting of a change of control under the regulations of the Securities Exchange Commission.

**Restricted Stock**

Under the Restricted Stock component of the 1988 Plan the Company may, in selected cases, issue to the Awardee a given number of shares of Restricted Stock. Restricted Stock under the 1988 Plan is common stock of the Company restricted as to sale for such time as the Committee shall determine. Prior to the lifting of the restrictions, the Awardee will nevertheless be entitled to receive dividends from and to vote the shares of Restricted Stock.

The Plan provides for forfeiture of Restricted Stock for breach of conditions and for modification or acceleration by the Company of the schedule for lifting restrictions. Lifting of restrictions will be accelerated in the event of a "Change of Control," as defined above.

### Some Common Elements of the 1988 Plan

The rights created by the grant of any one of the components of the 1988 Plan to an Awardee are essentially personal and, with the exceptions mentioned below, nontransferable. Each such award is normally made through a written agreement between the Company and the Awardee. The rights under any award are transferable during their terms only by will or pursuant to the laws of descent and distribution. In addition, an Awardee may make a designation of a beneficiary who may exercise any rights pertaining to such an award under its normal provisions after the Awardee's death.

The 1988 Plan, by its terms, is governed by the law of Delaware and is to be construed according to that law, except to the extent that certain Federal laws may otherwise control its construction.

In the event of a reorganization, recapitalization, stock split, stock dividend, combination of shares, merger, consolidation or any other change in the corporate structure of Dow affecting shares of its Common Stock, or a sale by Dow of all or part of its assets, or any distribution to stockholders other than a cash dividend, the Board of Directors of Dow will make appropriate adjustment in the number and kind of shares authorized by the Plan, and any adjustments to outstanding awards as it deems appropriate. No fractional shares of Common Stock will be issued pursuant to any such adjustment, however, and the fair market value of any fractional shares resulting from adjustments will be paid in cash to the Awardee.

The Board of Directors of Dow has the power to terminate the Plan at any time and from time to time, subject to limitations contained in the Plan, make such changes in and additions to the Plan as it deems proper and in the best interests of the Company, without further action on the part of the stockholders of the Company.

### Forfeiture

Awards may be forfeited if the Awardee terminates his or her employment with the Company, a Subsidiary or an Affiliate for any reason other than death or retirement, except that the Committee shall have the authority to provide for their continuation in whole or in part whenever it in its judgment shall determine that such continuation is in the best interests of the Company. Awards may furthermore be forfeited by an Awardee if the Committee determines that the Awardee has at any time engaged in any activity harmful to the interest of or in competition with the Company, its Subsidiaries or Affiliates or accepts employment with a competitor.

### Resales

Any Awardee under the Plan deemed to be an "affiliate" of the Company under the rules of the Securities and Exchange Commission may be subject to restrictions on the resale of Dow Common Stock acquired under the Plan. Shares of Dow Common Stock acquired by such "affiliates" (including all Directors of the Company) may be sold in accordance with offering terms specified in a prospectus which relates to such shares or in a transaction exempt from registration under the Securities Act of 1933 (for example, pursuant to Rule 144).

Persons who acquire shares of Dow Common Stock under the Plan who are not deemed to be "affiliates" of the Company may generally resell such shares without restriction.

4

# Income Tax Status

The Company has been advised by its Tax Counsel, Mr. Glenn W. White, that awards made under the 1988 Plan will give rise to the following tax events for U.S. citizens and residents under current U.S. Federal income tax law:

1. Awards of Deferred Stock

   a. The award of a right to receive stock at a future date will not have any immediate tax consequence. At the time shares of Common Stock are issued under any such award, the Awardee will be treated as having received taxable compensation subject to applicable federal, state and local income and FICA tax withholding. The amount of that income will be the fair market value of one share of Common Stock times the number of shares received. The Company will receive a federal income tax deduction for the same amount as is treated as taxable compensation to the Awardee.

   b. When dividend equivalents are paid in respect of unissued Common Stock, the amounts will be treated as taxable compensation subject to applicable federal, state and local income and FICA tax withholding. The Company will receive a federal tax deduction for the amount treated as compensation to the Awardee.

2. Incentive Stock Options

   The Awardee will not be subject to federal, state or local income or FICA taxes either at the time of grant of the Option or at the time of its exercise. The Company will not be entitled to a tax deduction by reason of such grant or exercise. However, upon exercise of the Option, the spread between the fair market value of the stock at the time of exercise and the Option price is an item of tax preference subject to the possible application of the alternative minimum tax. If a holder does not dispose of the shares acquired before the later of two years after the grant and one year after the exercise, any gain on a subsequent sale (i.e., the excess of the proceeds received over the Option price) will be a long-term capital gain. If the holder, however, disposes of the share within two years after the date of grant or within one year after the exercise of an Option, the disposition is a "disqualifying disposition," and the holder must recognize income in the year of the disposition equal to the lower of the excess of the sales price or the fair market value at date of exercise over the Option price. Exercising an Incentive Stock Option with Dow Common Stock which the holder of the option already owned and which was originally acquired on the exercise of another Incentive Stock Option may be a disqualifying disposition of such previously held stock. The Company will be entitled to a deduction of an equivalent amount (if an Awardee recognizes taxable compensation as a result of a disqualifying disposition) in the Company's taxable year in which the disposition occurs.

3. Non-Qualified Options

   The Awardee will not be subject to tax upon the grant of the Option and the Company will not be entitled to a tax deduction by reason of such grant. If an Awardee exercises a Non-Qualified Option the difference between the Option price and the fair market value of the shares on the date of exercise will be treated as taxable compensation to the Awardee which will be subject to applicable federal, state, local income and FICA tax withholding. The Company will be entitled to a tax deduction in the amount of and for the taxable year in which such amount is treated as compensation to the Awardee.

4. Awards of Restricted Stock

   a. Restricted stock will not be taxable when issued and the Company will not be entitled to a deduction at the time of issuance. When the restrictions are lifted, the Awardee will be treated as receiving taxable compensation in the amount of the excess of the then fair market value over the amount, if any, paid for the shares. The amount treated as compensation will be subject to applicable federal, state and local income and FICA tax withholding.

   b. The holding period for Restricted Stock begins on the date the restrictions are lifted.

   c. Dividends paid on Restricted Stock are taxable to the Awardee as compensation subject to applicable Federal, state and local income and FICA tax withholding. The Company is entitled to a deduction when such dividend payments are made.

5. Stock Appreciation Rights (SAR)

   Upon the exercise of an SAR, the Awardee will be treated as having received taxable compensation in an amount equal to the cash and/or fair market value of the shares of stock received pursuant to such exercise. Where Restricted Stock is received, pursuant to the exercise of an SAR, no amount will be treated as taxable compensation until the restrictions are lifted. The amount treated as taxable compensation to the Awardee will be subject to applicable federal, state and local income and FICA withholding taxes. The Company is entitled

(

to a deduction at the time of and equal to the amount the Awardee receives as taxable compensation.

6. Internal Revenue Code Section 33(b) election

Awardees of Restricted Stock and Awardees who are officers or directors may elect to immediately include in income the excess of the fair market value of the property received over the amount, if any, paid for such property. The amount included as income will be subject to applicable federal, state and local income and FICA tax withholding. The Company will be entitled to a deduction when the amount is included as income. The holding period for such stock begins on the date the election is made. The above advice relates only to United States federal income tax consequences. No advice is given with respect to the various states' tax consequences other than that awards treated as compensation will be subject to applicable state tax withholding. There may also be different tax consequences to Awardees who are citizens of or residents in countries other than the United States. No advice is given with respect to estate and gift taxes.

## Administration

The Plan is administered by the Compensation Committee of the Board of Directors of Dow, the members of which are elected annually by the Board of Directors. The Compensation Committee consists of not less than three nor more than five members who are Directors of the Company. The Committee presently consists of the following individuals: Robert M. Keil, Chairman, Herbert H. Dow, Barbara H. Franklin and Paul F. Oreffice. The business address of the Committee is 2030 Willard H. Dow Center, Midland, Michigan 48674. The members of the Compensation Committee are not eligible to participate in the Plan. The Compensation Committee has full power and authority to construe, interpret and administer the Plan and determinations of the Compensation Committee are final, conclusive and binding upon all persons. The Compensation Committee also has the power to adopt such forms of contracts for the grant of Awards under the Plan, with such terms as it deems necessary or advisable to carry out the Plan.

The Compensation Committee utilizes the services of the Company's Corporate Compensation Department in Midland to help administer the Plan. Personnel of that Department can help Awardees under the Plans with most of their questions. The address and telephone number for the Department are as follows:

Corporate Compensation Department
The Dow Chemical Company
2030 Willard H. Dow Center
Midland, Michigan 48674
Telephone: (517) 636-3143

## THE COMPANY

The Dow Chemical Company was incorporated in 1947 under Delaware law and is the successor to a Michigan corporation of the same name organized in 1897. The Company is engaged in the manufacture and sale of chemicals, metals, plastic materials and products, and pharmaceutical, agricultural and consumer products and in the performance of certain specialized services. Its principal executive offices are located at 2030 Willard H. Dow Center, Midland, Michigan 48674, telephone 517-636-1000. Except as otherwise indicated by the context, the terms "Company" or "Dow" as used herein mean The Dow Chemical Company.

The delivery of this prospectus at any time does not imply that the information herein is correct as of any time subsequent to the date of this prospectus.

## DESCRIPTION OF DOW CAPITAL STOCK

The only issued and outstanding capital stock of Dow is its common stock, par value $2.50 a share, which is issuable in only one class. Of the 500,000,000 authorized shares of Dow Common Stock, 289,743,323 shares were issued and outstanding as of March 14, 1988, and 27,031,636 shares were held in Dow's treasury. The outstanding shares are fully paid and non-assessable. The shares of Dow Common Stock have no conversion or preemptive rights and are not subject to redemption. Each share is entitled to such dividends as Dow's Board of Directors may validly declare from time to time and to equal participation in the assets of Dow upon liquidation. There are no significant restrictions limiting the availability of Dow's surplus as to the payment of dividends.

The Dow Common Stock has exclusive voting rights with each share entitled to one vote. At all elections of directors of Dow, stockholders are entitled to cast one vote for each share of common stock owned for each director. In addition, the Board of Directors is divided into three classes, with staggered terms of office for each

class. Directors serve for three year terms, and stockholders elect one-third of the Directors of the Board in any given year.

The Restated Certificate of Incorporation, as amended, of Dow authorizes 250,000,000 shares of preferred stock ("Dow preferred stock"), none of which has been issued. Dow preferred stock is issuable in series by resolution of the Board of Directors of Dow. The Board of Directors also may determine the rights and preferences of the Dow preferred stock that is issued, the authorized number of shares of Dow preferred stock to be issued and the rights of the holders of Dow preferred stock in the event of a dissolution or liquidation of, or certain mergers relating to, the Company.

## LEGAL OPINION

Legal matters in connection with the Plan and the shares of Dow Common Stock to be issued pursuant to the Plan have been passed upon for Dow by Wayne M. Hancock, Esq. Mr. Hancock is a Vice President and the General Counsel of Dow. Mr. Hancock and members of his household own shares of Dow Common Stock and Mr. Hancock also holds options to purchase shares of Dow Common Stock.

## EXPERTS

The consolidated financial statements and financial statement schedules of The Dow Chemical Company a. its subsidiaries and the related opinions of Deloitte Haskins & Sells, independent public accountants, included in and incorporated by reference in Dow's Annual Report on Form 10-K for the fiscal year ended December 31, 1987, are incorporated herein by reference. Such financial statements and financial statement schedules have been examined by Deloitte Haskins & Sells as stated in their opinions presented in and incorporated by reference in such Annual Report on Form 10-K and have been incorporated by reference herein in reliance upon the opinions of such firm given upon their authority as experts in accounting and auditing.

## INDEMNIFICATION OF DIRECTORS AND OFFICERS

Section 145 of the General Corporation Law of the State of Delaware empowers Dow to indemnify, subject to the standards and limitations therein prescribed, any person in connection with any action, suit or proceeding brought or threatened by reason of the fact that such person is or was a Director, officer, employee or agent of Dow or is or was serving as such with respect to another corporation or other entity at the request of Dow. Under Section VI of the by-laws of Dow, Dow is required to indemnify its Directors and officers to the full extent permitted by Delaware law whenever such indemnification is a defendant in any legal proceeding. Section VI also gives the Company discretion to indemnify Directors and officers in other legal proceedings to which they are made a party. Any indemnification of a Director or officer of the Company must be approved by the Board of Directors. Dow maintains a Directors and officers liability insurance policy that indemnifies Dow's Directors and officers against certain losses in connection with claims made against them for certain wrongful acts.

Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to Directors and officers under any of the foregoing provisions, Dow has been informed that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Securities Act of 1933 and is therefore unenforceable.

## THE DOW CHEMICAL COMPANY 1988 AWARD AND OPTION PLAN

**1. Establishment and Purpose of the Plan**

The Dow Chemical Company 1988 Award and Option Plan is hereby established upon the following terms and conditions. The purpose of the Plan is to attract and retain in the employ of the Company and its Subsidiaries and Affiliates people of ability, training and experience by providing such people, in consideration of services performed, an incentive for outstanding performance to the end of furthering the continued growth and profitability of the Company, and to encourage ownership of the Company's stock by such people.

**2. Definitions**

**2.01 Affiliate:** Any entity in which the Company has a substantial direct or indirect equity interest, as determined by the Committee.

**2.02 Award:** An award of Deferred Stock, Restricted Stock, Options or Stock Appreciation Rights under the Plan.

**2.03 Awardee:** An Employee to whom an Award is made.

**2.04 Board of Directors:** The Board of Directors of the Company.

**2.05 Common Stock:** The common stock of the Company, par value $2.50 a share, or such other class or kind of shares or other securities as may be applicable under Section 10.

**2.06 Company:** The Dow Chemical Company, a Delaware corporation, or any successor to substantially all its business.

**2.07 Committee:** The Compensation Committee of the Board of Directors, or such other committee designated by the Board of Directors, designated to administer the Plan under Section 4, which committee shall have at least three members each of which shall be a Disinterested Person.

**2.08 Deferred Stock:** Common Stock awarded by the Compensation Committee under Section 6 of the Plan.

**2.09 Disinterested Person:** A person defined in Rule 16b-3(d)(3) promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934 as amended, or any successor definition adopted by the Commission.

**2.10 Employee:** A full-time managerial, administrative or professional employee of the Company or a Subsidiary, including an officer or director who is such an employee, but excluding any employee who has provided to the Company a written irrevocable election not to be eligible.

**2.11 Fair Market Value:** As applied to a specific date, the average of the highest and lowest market prices of Common Stock, as reported on the consolidated transaction reporting system for New York Stock Exchange issues on such date or, if Common Stock was not traded on such date, on the next preceding day on which the Common Stock was traded. However, in the case of an Incentive Stock Option, if such method of determining Fair Market Value shall not be consistent with the then current regulations of the U.S. Secretary of the Treasury, Fair Market Value shall be determined in accordance with those regulations.

**2.12 Incentive Stock Option:** Any Option intended to meet the requirements of an incentive stock option as defined in Section 422A of the U.S. Internal Revenue Code of 1986 as amended or any statutory provision that may replace such Section.

**2.13 Non-Qualified Option:** Any Option not intended to be an Incentive Stock Option.

**2.14 Option:** Any option or options granted from time to time under the Plan, including both Non-Qualified Options and Incentive Stock Options.

**2.15 Plan:** The Dow Chemical Company 1988 Award and Option Plan herein set forth, as the same may from time to time be amended.

**2.16 Restricted Stock:** Common stock awarded by the Committee under Section 7 of the Plan.

**2.17 Stock Appreciation Rights:** Rights awarded by the Committee under Section 9 of the Plan.

**2.18 Subsidiary:** Any business association (including a corporation or a partnership, other than the Company) in an unbroken chain of such association beginning with the Company if each of the associations other than the last association in the unbroken chain owns equity interests (including stock or partnership interests) possessing 50% or more of the total combined voting power of all classes of equity interests in one of the other associations in such chain.

### 3. Eligibility

Any Employee is eligible to receive an Award.

### 4. Plan Administration

**4.01 Administrator:** The Plan shall be administered by the Committee.

**4.02 Administrative Powers:** The Committee shall have full power to interpret and administer the Plan and full authority to act in selecting the Employees to whom Awards will be granted, in determining the type and amount of Award to be granted to each such Employee, the terms and conditions of Awards granted under the Plan and the terms of agreements which will be entered into with Awardees. The Committee shall have the power to make regulations for carrying out the Plan and to make changes in such regulations as they from time to time deem proper. Any interpretation by the Committee of the terms and provisions of the Plan and the administration thereof, and all action taken by the Committee, shall be final, binding and conclusive on the Company, its stockholders, Subsidiaries, Affiliates, all Employees, their respective legal representatives, successors and assigns and upon all other persons claiming under or through any of them. As to the selection of and grants of awards to Awardees who are not subject to Sections 16(a) and 16(b) of the Securities Exchange Act of 1934, the Committee may delegate any or all of its responsibilities to members of the Company's administration.

**4.03 Limitation on Liability:** Members of the Board of Directors and members of the Committee acting under the Plan shall be fully protected in relying in good faith upon the advice of counsel and shall incur no liability except for gross negligence or willful misconduct in the performance of their duties.

### 5. Shares Subject to the Plan

**5.01** Subject to adjustment as provided in Section 10, the total number of shares of Common Stock available for grant under the Plan in each calendar year during any part of which the Plan is effective shall be one percent (1%) of the total outstanding shares of Common Stock as of the first day of such year for which the Plan is in effect; *provided* that such number shall be increased in any year by 25% of the shares available for grant hereunder in each of the previous three years, but not covered by Awards granted hereunder in such years; and *provided, further* that no more than ten million (10,000,000) shares shall be cumulatively available for the grant of Incentive Stock Options under the Plan. In addition, the Company may increase the shares available for Awards through an advance of up to 25% of the subsequent year's allocation (determined by using 25% of the current year's allocation). In addition, any shares issued by the Company through the assumption or substitution of outstanding grants from an acquired company shall not reduce the shares available for grants under the Plan. Any shares issued hereunder may consist, in whole or in part, of authorized and unissued shares or treasury shares. If any shares subject to any Award granted hereunder are forfeited or such Award otherwise terminates without the issuance of such shares or of other consideration in lieu of such shares, the shares subject to such Award, to the extent of any such forfeiture or termination, shall again be available for grant under the Plan.

### 6. Deferred Stock Rules and Conditions

The grant of Deferred Stock shall be upon the following rules and conditions:

**6.01 Deferred Stock Grants:** Deferred Stock shall be evidenced by Deferred Stock agreements. Such agreements shall conform to the requirements of the Plan and may contain such other provisions (including provisions for the protection of Deferred Stock in the event of mergers, consolidations, dissolutions, and liquidations affecting either the agreement or the stock issued thereunder) as the Committee shall deem advisable.

**6.02 Crediting of Deferred Stock:** Upon determination of the number of shares of Deferred Stock to be granted to an Awardee the Committee shall direct that the same be credited to the Awardee's account on the books of the Company but that issuance and delivery of the same shall be deferred until the date or dates provided in Section 6.04 hereof. Prior to issuance and delivery hereunder the Awardee shall have no rights as a stockholder with respect to any shares of Deferred Stock credited to his or her account.

**6.03 Payment Equivalent to Dividends:** During the period that shares of Deferred Stock remain credited to the account of an Awardee and before their issuance and delivery, the Company shall pay to the Awardee as additional compensation on each date dividends on Common Stock are paid a sum of money equal to what would have been received if the shares of Deferred Stock credited to the account had been owned.

**6.04 Delivery:** Subject to the terms and conditions described herein, the shares of Deferred Stock credited to the account of an Awardee shall be issued and delivered to the Awardee in one or more installments beginning with such date as the Committee may determine. The Committee may, in its sole discretion, modify or accelerate the delivery of any shares of Deferred Stock under such circumstances as it deems appropriate.

### 7. Restricted Stock Rules and Conditions

The grant of Restricted Stock shall be upon the following rules and conditions:

7.01 **Restricted Stock Grants:** Restricted Stock shall be evidenced by Restricted Stock agreements. Such agreements shall conform to the requirements of the Plan and may contain such other provisions (including provisions for the protection of Restricted Stock in the event of mergers, consolidations, dissolutions, and liquidations, affecting either the agreement or the stock issued thereunder) as the Committee shall deem advisable.

7.02 **Issuance of Restricted Stock:** Upon determination of the number of shares of Restricted Stock to be granted to an Awardee the Committee shall direct that a certificate representing the number of shares of Common Stock be issued to the Awardee with the Awardee as the registered owner. The certificate representing such shares shall either be legended as to sale, transfer, assignment, pledge or other encumbrances during the restricted period or deposited by the Awardee, together with a stock power endorsed in blank, with the Company.

7.03 **Dividends and Voting Rights:** During the restricted period the Awardee shall have the right to receive dividends from and to vote the shares of Restricted Stock.

7.04 **Delivery:** The Restricted Stock agreement shall specify the duration of the restricted period and the performance and/or employment conditions under which the Restricted Stock may be forfeited to the Company. At the end of the restricted period the restrictions imposed hereunder shall lapse with respect to the number of shares of Restricted Stock as determined by the Committee, and the legend shall be removed or the shares delivered, as the case may be, with respect to such number. The Committee may, in its sole discretion, modify or accelerate the vesting of shares of Restricted Stock.

8. **Option Rules and Conditions**
    The grant of Options shall be upon the following rules and conditions:

8.01 **Option Grants:** Options shall be evidenced by Option agreements. Such agreements shall conform to the requirements of the Plan, and may contain such other provisions (including restrictions upon the exercise of the Option, provisions for the protection of Options in the event of mergers, consolidations, dissolutions, and liquidations) as the Committee shall deem advisable.

8.02 **Option Price:** The price at which Common Stock may be purchased upon exercise of an Option shall be determined by the Committee, but shall be not less than the greater of the Fair Market Value of such shares on the date the Option is granted or the par value of such Common Stock.

8.03 **Terms of Options:** The Option agreements shall specify when an Option may be exercisable and the terms and conditions applicable in the event of the Awardee's termination of employment during the Option's term. In any case the term of an Option shall in no event be greater than ten years, and no Option may be exercisable less than one year from date of grant.

8.04 **Incentive Stock Options:** Each provision of the Plan and each Option agreement relating to an Incentive Stock Option shall be construed so that each Incentive Stock Option shall be an incentive stock option as defined in Section 422A of the Internal Revenue Code of 1986 as amended or any statutory provision that may replace such Section, and any provisions thereof that cannot be so construed shall be disregarded. In no event may an Awardee be granted Incentive Stock Options which do not comply with such grant and vesting limitations as may be prescribed by Section 422A(b)(7) of the Internal Revenue Code of 1986 as amended, or any successor section or limitation and any implementing regulations.

8.05 **Payment of Option Price:** The Option price of the shares of Common Stock for which an Option shall be exercised shall be paid in full in cash at the time of the exercise or, with the consent of the Committee, in whole or in part in Common Stock valued at Fair Market Value. An Awardee shall have no rights of a stockholder with respect to any shares of Common Stock subject to an Option unless and until a stock certificate for such shares shall have been issued to him or her.

9. **Stock Appreciation Rights**
    The grant of Stock Appreciation Rights ("SARs") shall be subject to the following rules and conditions:

9.01 **Stock Appreciation Right Grants:** Stock Appreciation Rights are rights to receive a payment in cash, Common Stock, Restricted Stock or Deferred Stock as selected by the Committee. These rights, which are determined by the appreciation in Common Stock, shall be evidenced by Stock Appreciation Right agreements. Such agreements shall conform to the requirements of the Plan and may contain such other provisions as the Committee shall deem advisable. An SAR may be granted in tandem with all or a portion of a related stock option under the Plan ("Tandem SAR"), or may be granted separately ("Freestanding SAR"). A Tandem SAR may be granted either at the time of the grant of the option or at any time thereafter during the term of the option and shall be capable of being exercised only to the extent that the related stock option is capable of being exercised. In no event shall a Freestanding SAR be exercisable within the first six

months of its grant, or in the case of a Tandem SAR within the first six months of the grant of the related Option.

9.02 **SAR Price:** The exercise price of a Tandem SAR shall be the option price under the related stock option. The exercise price of a Freestanding SAR shall be not less than 100% of the fair market value of the Common Stock, as determined by the Committee, on the date of grant of the Freestanding SAR. Notwithstanding the foregoing, the Committee may unilaterally limit the appreciation in value of the Common Stock attributable to the SAR at any time prior to its exercise.

9.03 **Exercise of SAR:** A Tandem SAR and a Freestanding SAR shall entitle the recipient to receive a payment equal to the excess of the fair market value of the shares of Common Stock covered by the SAR on the date of exercise over the exercise price of the SAR or such lesser amount as determined by the Committee. Such payment may be in cash, in shares of Common Stock, in shares of Deferred Stock, Restricted Stock or any combination, as the Committee shall determine. Upon exercise of a Tandem SAR as to some or all of the shares covered by the grant, the related stock option shall be cancelled automatically to the extent of the number of shares covered by such exercise, and such shares shall no longer be available for issuance under Section 8. Conversely, if the related stock option is exercised as to some or all of the shares covered by the grant, the related Tandem SAR, if any, shall be cancelled automatically to the extent of the number of shares covered by the stock option exercise. To the extent an SAR (or the related stock option) has not been exercised on its expiration, it will be exercised automatically and paid in the form determined by the Committee.

9.04 **Terms of SAR:** SARs shall be subject to the same terms and conditions applicable to options as stated in Section 8.03. SARs shall also be subject to such other terms and conditions not inconsistent with the Plan as shall be determined by the Committee.

10. **Adjustments Upon Changes in Capitalization**

In the event of a reorganization, recapitalization, stock split, stock dividend, combination of shares, merger, consolidation or any other change in the corporate structure of the Company affecting Common Stock, or a sale by the Company of all or part of its assets, or any distribution to stockholders other than a normal cash dividend, the Board of Directors shall make appropriate adjustment in the number and kind of shares authorized by the Plan and any adjustments to outstanding Awards as it determines appropriate. No fractional shares of Common Stock shall be issued pursuant to such an adjustment, however, and the Fair Market Value of any fractional shares resulting from adjustments pursuant to this section shall be paid in cash to the Awardee.

11. **Effective Date, Termination and Amendment**

The Plan shall become effective on May 12, 1988, subject to shareholder approval. The Plan shall remain in full force and effect until terminated by the Board of Directors, who shall have the power to amend, suspend or terminate the Plan at any time, provided that no such amendment shall be made without stockholder approval which shall:

11.01 Increase (except as provided in Section 10) the total number of shares available for issuance pursuant to the Plan.

11.02 Change the class of employees eligible to be Awardees.

11.03 Decrease the Option Price stated in Section 8.02.

11.04 Withdraw the administration of the Plan from the Committee;

11.05 Change the provisions of this Section 11.

12. **Forfeiture**

Awards may be forfeited if the Awardee terminates his or her employment with the Company, a Subsidiary or an Affiliate for any reason other than death or retirement, except that the Committee shall have the authority to provide for their continuation in whole or in part whenever it in its judgment shall determine that such continuation is in the best interests of the Company. Awards may furthermore be forfeited by an Awardee if the Committee determines that the Awardee has at any time engaged in any activity harmful to the interest of or in competition with the Company, its Subsidiaries or Affiliates or accepts employment with a competitor.

13. **Non-Assignability**

Awards may not be pledged, assigned or transferred for any reason during the Awardee's lifetime, and any attempt to do so shall be void and the relevant Award shall be forfeited.

14. **Beneficiary upon Awardee's death**

An Awardee's Award shall be transferable at his or her death to the beneficiary designated by the Awardee on terms prescribed by and filed with the Committee. Upon the death of an Awardee, such beneficiary shall succeed

11

to the rights of the Awardee. If no such designation of a beneficiary has been made, the Awardee's Awards shall succeed to his or her legal representative and shall be transferable by will or pursuant to the laws of descent and distribution.

## 15. General Provisions

15.01 Nothing contained in the Plan, or in any Award granted pursuant to the Plan, shall confer upon any Employee any right with respect to continuance of employment by the Company, a Subsidiary or Affiliate, nor interfere in any way with the right of the Company a Subsidiary or Affiliate to terminate the employment of any Employee at any time with or without assigning any reason therefor.

15.02 For purposes of this Plan, transfer of employment between the Company and its Subsidiaries and Affiliates shall not be deemed termination of employment.

15.03 Appropriate provision may be made for all taxes required to be withheld in connection with any Award, the exercise thereof and the transfer of shares of Common Stock in respect of any Federal, state or local withholding taxes whether domestic or foreign. In the case of the payment of Awards in the form of Common Stock, the Company shall have the right to retain the number of shares of Common Stock whose fair market value equals the amount to be withheld.

15.04 If any day on or before which action under the Plan must be taken falls on a Saturday, Sunday or legal holiday, such action may be taken on the next succeeding day not a Saturday, Sunday or legal holiday.

15.05 Without amending the Plan, awards may be granted to Employees who are foreign nationals or employed outside the United States or both, on such terms and conditions different from those specified in the Plan as may, in the judgment of the Committee, be necessary or desirable to further the purpose of the Plan.

15.06 To the extent that Federal laws (such as the Securities Exchange Act of 1934, the Internal Revenue Code of 1986 or the Employee Retirement Income Security Act of 1974) do not otherwise control, the Plan and all determinations made and actions taken pursuant hereto shall be governed by the law of Delaware and construed accordingly.

15.07 The Committee may amend any outstanding Awards to the extent it deems appropriate. Such amendment may be unilateral by the Company, except in the case of amendments adverse to the Awardee, in which case the Awardee's consent is required to any such amendment.

15.08 Notwithstanding any other provision of the Plan to the contrary:

( i) Deferred Stock: Upon the occurrence of a Change in Control, an Awardee's right to receive the number of shares of Deferred Stock credited to the account of the Awardee shall not be forfeitable under any circumstances, including but not limited to those circumstances set forth in Section 12 of the Plan. The Company shall deliver to the Awardee the shares of Deferred stock credited to the account of the Awardee on the thirtieth day following the occurrence of a Change in Control unless the Awardee elects prior to the date of delivery of such Deferred Stock to receive a lump sum cash amount in lieu of such Deferred Stock, equal to the number of shares of Deferred Stock credited to the account of the Awardee multiplied by the greater of: (A) the highest price per share paid for the purchase of Common Stock in connection with the Change in Control or (B) the highest closing price per share paid for the purchase of Common Stock on the principal exchange on which the Common Stock is listed, or, if the Common Stock is not listed, on the NASD automatic quotation system, during the 30-day period immediately preceding the Change in Control. The Compensation Committee shall have no discretion or authority to alter or delay the amount or form of payment of the Awardee's shares of Deferred Stock, except to accelerate such payment.

( ii) Restricted Stock: Upon the occurrence of a Change in Control, all of the restrictions on Restricted Stock shall lapse and be of no effect whatsoever and such shares shall not thereafter be forfeitable under any circumstances, including but not limited to those circumstances set forth in Sections 12 or 7.04 of the Plan. The Company shall deliver to the holder of shares of Restricted Stock certificates representing the number of shares and securities on which restrictions have so lapsed free of any restriction, legend or notation within 30 days following the occurrence of a Change of Control. In the event legended shares were previously provided to the Awardee, the replacement shares will only be delivered upon tender by the holder of certificates representing shares of Restricted Stock in form acceptable for transfer and free and clear of all liens, claims, options and encumbrances. Neither the Board of Directors nor the Compensation Committee shall have authority to alter or delay the delivery of Common Stock pursuant to the terms of this Paragraph without the holder's written consent.

12

(iii) Definition: "Change in Control" shall mean a change in control of the Company of a nature that would be required to be reported in response to Item 5(f) of Schedule 14A of Regulation 14A promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), whether or not the Company is then subject to such reporting requirement; provided that, without limitation, a Change in Control shall be deemed to have occurred if (A) any individual, partnership, firm, corporation, association, trust, unincorporated organization or other entity, or any syndicate or group deemed to be a person under Section 14(d)(2) of the Exchange Act, is or becomes the "beneficial owner" (as defined in Rule 13d-3 of the General Rules and Regulations under the Exchange Act), directly or indirectly, of securities of the Company representing 20% or more of the combined voting power of the company's then outstanding securities entitled to vote in the election of directors of the Company; or (B) during any period of two (2) consecutive years (not including any period prior to the execution of this Plan), individuals who at the beginning of such period constitute the Board of Directors and any new directors, whose election by the Board of Directors or nomination for election by the company's stockholders was approved by a vote of at least three quarters (3/4) of the directors then still in office who either were directors at the beginning of the period or whose election or nomination for election was previously so approved, cease for any reason to constitute a majority thereof. A change in control shall not be deemed to be a Change in Control for purposes of this Plan if the Board of Directors has approved such change in control prior to either (i) the occurrence of any of the events described in the foregoing clauses (A) and (B), or (ii) the commencement by any person other than the Company of a tender offer for the Common Stock.

16. **Effective Date and Termination**

The Plan shall be effective on May 12, 1988, subject to shareholder approval. The Plan shall remain in full force and effect until terminated by the Board of Directors.

# PART II

## INFORMATION NOT REQUIRED IN THE PROSPECTUS

---

### INDEMNIFICATION OF DIRECTORS AND OFFICERS

Section 145 of the General Corporation Law of the State of Delaware empowers Dow to indemnify, subject to the standards and limitations therein prescribed, any person in connection with any action, suit or proceeding brought or threatened by reason of the fact that such person is or was a Director, officer, employee or agent of Dow or is or was serving as such with respect to another corporation or other entity at the request of Dow. Under Section VI of the By-Laws of Dow, Dow is required to indemnify its Directors and officers to the full extent permitted by Delaware law whenever such a person is a defendant in any legal proceeding. Section VI also gives the Company discretion to indemnify Directors and officers in other legal proceedings to which they are made a party. Any indemnification of a Director or officer of the Company must be approved by the Board of Directors. Dow maintains a Directors and officers liability insurance policy that indemnifies Dow's Directors and officers against certain losses in connection with claims made against them for certain wrongful acts.

Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to Directors and officers under any of the foregoing provisions, Dow has been informed that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Securities Act of 1933 and is therefore unenforceable.

### EXHIBITS

| Exhibit No. | Description of Exhibit |
|---|---|
| 4a | Restated Certificate of Incorporation, as amended, of The Dow Chemical Company, as currently in effect (incorporated by reference to Exhibit 3a to the Registrant's Annual Report on Form 10-K, File No. 1-3433, for the year ended December 31, 1987. (See also "Description of Dow Capital Stock," at page 6 of the Prospectus, and full text of The Dow Chemical Company 1988 Award and Option Plan, at page 8 of the Prospectus.) |
| 5 | Opinion of Wayne M. Hancock, General Counsel of the Registrant, with respect to the legality of the Dow Common Stock to be issued pursuant to The Dow Chemical Company 1988 Award and Option Plan. |
| 13 | Copy of The Dow Chemical Company's 1987 Annual Report to stockholders. |
| 24 | Consents of Experts |
| 25 | Power of Attorney appointing Donna J. Roberts, Wayne M. Hancock, Walter D. Bradley or Enrique C. Falla attorneys in fact to execute this registration statement. |
| 28 | List of subsidiaries of The Dow Chemical Company called for by the Instruction to Item 4 (a). |

### UNDERTAKINGS

(a) The undersigned registrant hereby undertakes:

(1) To file, during any period in which offers or sales are being made, a post-effective amendment to this registration statement:

(i) To include any prospectus required by section 10(a)(3) of the Securities Act of 1933;

(ii) To reflect in the prospectus any facts or events arising after the effective date of the registration statement (or the most recent post-effective amendment thereof) which, individually or in the aggregate, represents a fundamental change in the information set forth in the registration statement;

(iii) To include any material information with respect to the plan of distribution not previously disclosed in the registration statement or any material change to such information in the registration statement:

*Provided, however,* that paragraphs (a)(1)(i) and (a)(1)(ii) do not apply if the registration statement is on Form S-3 or Form S-8 and the information required to be included in a post-effective amendment by those paragraphs is contained in periodic reports filed by the registrant pursuant to section 13 or section 15(d) of the Securities Exchange Act of 1934 that are incorporated by reference in the registration statement.

(2) That, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(3) To remove from registration by means of a post-effective amendment any of the securities being registered which remain unsold at the termination of the offering.

(b) The undersigned registrant hereby undertakes that, for purposes of determining any liability under the Securities Act of 1933, each filing of the registrant's annual report pursuant to section 13(a) or section 15(d) of the Securities Exchange Act of 1934 (and, where applicable, each filing of an employee benefit plan's annual report pursuant to section 15(d) of the Securities Exchange Act of 1934) that is incorporated by reference in the registration statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(f) *Employee plans on Form S-8.*

(1) The undersigned registrant hereby undertakes to deliver or cause to be delivered with the prospectus to each employee to whom the prospectus is sent or given a copy of the registrant's annual report to stockholders for its last fiscal year, unless such employee otherwise has received a copy of such report, in which case the registrant shall state in the prospectus that it will promptly furnish, without charge, a copy of such report on written request of the employee. If the last fiscal year of the registrant has ended within 120 days prior to the use of the prospectus, the annual report of the registrant for the preceding fiscal year may be so delivered, but within such 120 day period the annual report for the last fiscal year will be furnished to each such employee.

(2) The undersigned registrant hereby undertakes to transmit or cause to be transmitted to all employees participating in the plan who do not otherwise receive such material as stockholders of the registrant, at the time and in the manner such material is sent to its stockholders, copies of all reports, proxy statements and other communications distributed to its stockholders generally.

(3) Where interests in a plan are registered herewith, the undersigned registrant and plan hereby undertake to transmit or cause to be transmitted promptly, without charge, to any participant in the plan who makes a written request, a copy of the then latest annual report of the plan filed pursuant to section 15(d) of the Securities Exchange Act of 1934 (Form 11-K). If such report is filed separately on Form 11-K, such form shall be delivered upon written request. If such report is filed as a part of the registrant's annual report on Form 10-K, that entire report (excluding exhibits) shall be delivered upon written request. If such report is filed as a part of the registrant's annual report to stockholders delivered pursuant to paragraph (1) or (2) of this undertaking, additional delivery shall not be required.

(i) Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to directors, officers and controlling persons of the registrant pursuant to the foregoing provisions, or otherwise, the registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore, unenforceable. In the event that a claim for indemnification against such liabilities (other than the payment by the registrant of expenses incurred or paid by a director, officer or controlling person of the registrant in the successful defense of any action, suit or proceeding) is asserted by such director, officer or controlling person in connection with the securities being registered, the registrant will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question whether such indemnification by it is against public policy as expressed in the Act and will be governed by the final adjudication of such issue.

# SIGNATURES

*The Registrant.* Pursuant to the requirements of the Securities Act of 1933, the registrant certifies that it has reasonable grounds to believe that it meets all of the requirements for filing on form S-8 and has duly caused this registration statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Midland, and the State of Michigan on _____

THE DOW CHEMICAL COMPANY
(Registrant)

By: _____ E. C. FALLA*_____
E. C. Falla,
Financial Vice President

Pursuant to the requirements of the Securities Act of 1933, this registration statement has been signed below by the following persons in the capacities and on the dates indicated.

| | |
|---|---|
| F. P. POPOFF* | Director and President |
| F. P. Popoff | (Chief Executive Officer) |
| P. F. OREFFICE* | Director and Chairman of the Board |
| P. F. Oreffice | |
| E. C. FALLA* | Director |
| E. C. Falla | (Chief Financial Officer) |
| B. B. BUTCHER* | Director |
| B. B. Butcher | |
| A. J. BUTLER* | Director |
| A. J. Butler | |
| H. H. DOW* | Director |
| H. H. Dow | |
| M. L. DOW* | Director |
| M. L. Dow | |
| B. H. FRANKLIN* | Director |
| B. H. Franklin | |
| H. W. HENRY* | Director |
| H. W. Henry | |
| R. M. KEIL* | Director |
| R. M. Keil | |
| W. N. LIPSCOMB, JR.* | Director |
| W. N. Lipscomb, Jr. | |
| K. R. McKENNON* | Director |
| K. R. McKennon | |
| D. A. RIKARD* | Director |
| D. A. Rikard | |
| H. T. SHAPIRO* | Director |
| H. T. Shapiro | |
| D. P. SHEETZ* | Director |
| D. P. Sheetz | |
| J. G. TEMPLE, JR.* | Director |
| J. G. Temple, Jr. | |
| R. L. KESSELER* | Vice President and Controller |
| R. L. Kesseler | |

*By: _____   Attorney-in-fact

Dated: _____

EXHIBIT 5

 **THE DOW CHEMICAL COMPANY**

2030 WILLARD H. DOW CENTER
MIDLAND, MICHIGAN 48674

May 12, 1983

The Dow Chemical Company
2030 Willard H. Dow Center
Midland, MI  48674

Gentlemen:

I am familiar with the Restated Certificate of Incorporation, as
amended, and with the existing By-Laws of The Dow Chemical Company (the
"Company"), which was incorporated under the laws of the State of
Delaware.  I have examined the action taken by the Company to authorize
the Compensation Committee of its Board of Directors to grant awards of
Stock Options, Restricted Stock, Deferred Stock and Stock Appreciation
Rights to Officers and other key employees of the Company and its
subsidiaries pursuant to The Dow Chemical Company 1988 Award and Option
Plan.  This Plan provides for awards in any one year of up to 1% of the
Company's outstanding shares of $2.50 par value Common Stock, subject
to certain adjustments, carry-over and carry-back provisions.

I am of the opinion:

1.  That the Company was duly organized and since its incorporation
    has continuously maintained its corporate existence and authority
    under the laws of the State of Delaware, and

2.  That the grant of said shares of Common Stock to employees as
    aforesaid is within the scope of the Company's corporate powers,
    has been duly authorized by proper corporate action and that, upon
    issuance, certificates for such shares will represent validly
    issued, fully-paid and non-assessable shares of such Common Stock.

I hereby consent to the filing of this opinion as an exhibit to your
Registration Statement on Form S-8 to be filed with the Securities and
Exchange Commission with respect to the registering of said shares of
Common Stock under the Company's 1988 Award and Option Plan and to the
use of my name in the related Prospectus under the caption "Legal
Opinion."

Sincerely yours,

W. H. Hancock
Vice President
and General Counsel

jdk