UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

J. PEDRO REINHARD,                           :
                                             :
                        Plaintiff,           :     07 CV 3641 (RPP)
                                             :
        - against -                          :
                                             :
THE DOW CHEMICAL COMPANY and                 :
ANDREW N. LIVERIS,                           :
                                             :
                        Defendants.          :
                                             :
———————————————————— x


PLAINTIFF'S MEMORANDUM IN OPPOSITION TO (i)  DEFENDANT DOW
CHEMICAL'S MOTION TO TRANSFER, AND
(ii)  DEFENDANT LIVERIS' MOTION TO DISMISS OR TRANSFER

Table of Contents

Page

Table of Authorities ........................................................................................... iii

Preliminary Statement ........................................................................................ 1

Facts ..................................................................................................................... 3

A.    Mr. Reinhard's exemplary, thirty-seven-year career at Dow ................................. 3

B.    Defendants' false and malicious statements about Mr. Reinhard ......................... 4

C.    In the midst of settlement discussions with Mr. Reinhard in New York,
      Dow attempts to preempt Mr. Reinhard's defamation action by filing a
      lawsuit in Michigan ................................................................................... 6

Argument ............................................................................................................. 7

Point 1    DOW HAS NOT MET ITS HEAVY BURDEN OF DEMONSTRATING
           THAT THIS ACTION SHOULD BE TRANSFERRED ............................ 7

      A.    Mr. Reinhard's chosen forum is entitled to substantial deference ........................ 7

      B.    Dow has fallen far short of a clear and convincing showing that the
            Eastern District of Michigan is the more appropriate forum ............................. 10

            1.    Plaintiff's choice of forum:  Mr. Reinhard, as plaintiff, should be
                  permitted to vindicate his reputation in the center of the nation's
                  business and financial community ............................................... 11

            2.    Location of witnesses:  New York is the more convenient forum
                  for the key witnesses ............................................................. 12

            3.    The location of relevant documents and the relative ease of access to
                  sources of proof:  Dow has made no showing that producing documents
                  in New York will impose a material burden on the Company ................... 14

            4.    The locus of the operative facts:  Mr. Reinhard has been harmed by
                  defamatory statements published by defendants in New York, the
                  nation's business and financial capital ......................................... 15

            5.    The availability of process to compel attendance of unwilling witnesses:
                  The most important non-party witnessis subject to process in
                  New York ........................................................................... 16

            6.    Convenience of the parties: New York is a convenient forum
                  for all parties ...................................................................... 17

Table of Contents
(continued)

Page

7.  The relative means of the parties: Requiring Mr. Reinhard to litigate in
    Michigan would materially increase his litigation costs.............................18

8.  Familiarity with the governing law: Michigan law will govern
    few if any issues.......................................................................................18

9.  Trial efficiency and the interests of justice: New York is the more
    efficient and just forum............................................................................19

C.  Mr. Liveris' motion to transfer should likewise be denied..................................20

Point 2  MR. LIVERIS' OBJECTION TO VENUE IS MERITLESS .....................................20

A.  Venue is proper in this district because Mr. Liveris is an alien and Dow
    has either waived its objection to venue or is subject to suit under
    28 U.S.C. §1391(a)(1) ......................................................................................21

B.  Venue is proper in this district under 28 U.S.C. § 1391(a)(2)............................22

Conclusion.....................................................................................................................25

KL3 2601740.3

# TABLE OF AUTHORITIES

## CASES

Page

*Berman v. Informix Corp.*, 30 F. Supp. 2d 653 (S.D.N.Y. 1998)....................................18

*Brunette Mach. Works, Ltd. v. Kockum Indus.*, 406 U.S. 706 (1972) ......................................21, 22

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ....................................16

*Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005)............................24

*Dashman v. Peter Letterese & Assocs.*, 999 F. Supp. 553 (S.D.N.Y. 1998)............................22, 23

*Day Village Ltd. Partnership v. CW Capital L.L.C.*, No. 06-CV-3424 (LTS) (HBP), 2006 WL 2572118 (S.D.N.Y. Sept. 7, 2006) ...................................................................................22

*Dealtime.com v. McNulty*, 123 F. Supp. 2d 750 (S.D.N.Y. 2000) ..................................................16

*Delcath Systems, Inc. v. Enney*, No. 05-Cv-1281 (JCH), 2006 WL 1525986 (D. Conn. May 26, 2006) ...............................................................................................................................24

*Elbex Video, Ltd. v. Tecton, Ltd.*, No. 00-CV-0673 (LMM), 2000 WL 1708189 (S.D.N.Y. 2000) ......................................................................................................................9, 10

*Expotrade, Ltd. v. Dominguez*, 470 F. Supp. 179 (D. Colo. 1979) ...............................................21

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)................................................................................8

*Haaretz Daily Newspapers, Ltd., et al. v. Chani Inc.*, No. 98-CV-2878 (JGK) (JCF), 1999 WL 796163 (S.D.N.Y. Oct., 1999) ................................................................................21

*Hall v. South Orange*, 89 F. Supp. 2d 488 (S.D.N.Y. 2000).........................................................23

*Hill v. Golden Corral Corp.*, No. 98-CV-7872 (JG), 1999 WL 342251 (E.D.N.Y. May 21, 1999)............................................................................................................................................7

*Hispanic Business, Inc. v. Hispanic Pub. Co.*, No. 97-CV-01557 (RPP), 1997 WL 681315 (S.D.N.Y. 1997) .................................................................................................................8

*Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000)...............................................................................................................................................25

*I.M.D. USA, Inc. v. Shalit*, 92 F. Supp. 2d 315 (S.D.N.Y. 2000) ..................................................23

KL3 2601740.3

Table of Authorities
(continued)

Page

*Jaffe v. Dolan*, 264 F. Supp. 845 (E.D.N.Y. 1967) .......................................................15

*JewelAmerica v. Frontstep Solutions Group, Inc.*, No. 02-CV-1328 (RO), 2002 WL
    1349754 (S.D.N.Y. 2002) .......................................................................................8

*In re Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y.
    1995)..........................................................................................................................9

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203 (S.D.N.Y. 1998) ..........*passim*

*Osis v. 1993 GF Partnership, L.P.*, No. 99-CV-0797 (AVC), 2000 WL 840050 (D. Conn.
    March 31, 2000) .......................................................................................................21

*Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196 (E.D.N.Y. 1998)........................................14

*Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49 (S.D.N.Y. 2001) .........................11

*Robeson v. Howard University*, No. 00-CV-7389 (GBD), 2002 WL 122913 (S.D.N.Y.
    2002)..........................................................................................................................9

*Rockshots, Inc. v. Comstock Cards, Inc.*, No. 87-CV-3453 (CSH), 1990 WL 74514
    (S.D.N.Y. May 29, 1990) .........................................................................................11

*Rothstein v. Carriere*, 41 F. Supp. 2d 381 (E.D.N.Y. 1999) ...........................................25

*Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00-CV-1971 (AGS), 2000
    WL 1290585 (S.D.N.Y 2000) ..................................................................................14

*Telebrands Corp. v. Wilton Indus., Inc.*, 983 F. Supp. 471 (S.D.N.Y. 1997)...............................13

*Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998)...................................15

*In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678 (E.D. Tex. 1999) ...............................21

*Wachtel v. Storm*, 796 F. Supp. 114 (S.D.N.Y. 1992)....................................................24

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000)......................................8

*Zerman v. Sullivan & Cromwell*, 677 F. Supp. 1316 (S.D.N.Y. 1988)........................................18

**STATUTES**

28 U.S.C. § 1391(a)..............................................................................................20, 22

KL3 2601740.3

Table of Authorities
(continued)

Page

28 U.S.C. 1391(a)(1) ..................................................................................21, 22

28 U.S.C. § 1391(a)(2) ..................................................................................passim

28 U.S.C. § 1391(b)(2) ......................................................................................24

28 U.S.C. § 1392(b)..........................................................................................23

28 U.S.C. § 1391(c)..........................................................................................22

28 U.S.C. § 1404 .......................................................................................19, 20

28 U.S.C. § 1404(a) .....................................................................................1, 7

28 U.S.C. § 1406(a) ...................................................................................1, 20

Fed. R. Civ. P. 12(b)(3) .....................................................................................1

## MISCELLANEOUS

14D Charles Alan Wright, Arthur Miller, and Edward H. Cooper, *Federal Practice &
Procedure* § 3804 .........................................................................................23

14D *Federal Practice & Procedure* § 3810 .........................................................*passim*

15 *Federal Practice & Procedure* § 3851 ..............................................................12

1A *Federal Procedure*, L. Ed., § 1:751 ..................................................................15

KL3 2601740.3

<u>Preliminary Statement</u>

Plaintiff J. Pedro Reinhard respectfully submits this memorandum in opposition to (i) the motion by defendant The Dow Chemical Company, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Eastern District of Michigan (Bay City), and (ii) the motion by defendant Andrew Liveris, pursuant to Fed. R. Civ. P. 12(b)(3), to dismiss this action for lack of venue, or, pursuant to 28 U.S.C. § 1406(a), to transfer this action to the Eastern District of Michigan.  Mr. Liveris in the alternative also joins in Dow's motion to transfer pursuant to 28 U.S.C. § 1404(a).

- *Dow's Motion to Transfer*:  Dow – a $50 billion dollar company that has litigated countless cases in New York, including several as plaintiff – seeks to deny Mr. Reinhard his choice of forum and derail his defamation suit by transferring this litigation to Dow's home state of Michigan.  Dow asks the Court to ignore the presumption that attaches to plaintiff's chosen forum and defer instead to what Dow calls its "first-filed" action: a transparently preemptive suit, filed in the midst of settlement talks and the same morning as this case was filed here.  In making this argument, Dow fails to bring to the Court's attention clear authority in this Circuit holding that the "first-filed" rule – which Dow claims gives precedence to its own suit and strips Mr. Reinhard's choice of forum of any entitlement to deference – is inapplicable when, as here, the competing parties' suits were filed on the same day.

There is no reason why this suit should be transferred to Michigan.  Mr. Reinhard – a thirty-seven-year Dow employee and director at three other major public corporations – filed his action in this Court to repair the harm done to his reputation by false and malicious statements published in the financial press, most prominently in New York, by Dow and its Chairman and Chief Executive Officer Andrew Liveris, following Dow's summary termination

of Mr. Reinhard from the company on April 12, 2007. Defendants' statements have injured Mr. Reinhard's reputation most seriously in New York, where he sits on the board of the Colgate-Palmolive Company and is active in the business community. Dow and Mr. Liveris, moreover, claim that Mr. Reinhard was fired and publicly accused of misconduct based solely on information supposedly provided to them by a witness who lives and works in New York – a crucial fact buried in a footnote halfway through Dow's brief. And at the core of this dispute is the purported role Dow incorrectly alleges Mr. Reinhard played in a takeover plan organized by employees of the London affiliate of a New York-based investment bank and a group of investors in the Middle East. These events have no connection to Michigan.

Given these undisputed facts, the appropriate forum for this case is not, as Dow claims, the Eastern District of Michigan, and Dow has not even approached the "clear and convincing" showing necessary to overcome the presumption that this case should proceed in Mr. Reinhard's forum of choice.

- *Liveris' Motion to Dismiss or Transfer for Lack of Venue*: Mr. Liveris, who has spearheaded Dow's effort to destroy Mr. Reinhard's reputation and purge an independent, experienced, and respected voice from Dow's Board, does not assert any particular reason why the Southern District of New York would be an inconvenient or unjust forum. Nor can he. Mr. Liveris regularly travels to New York, where he sits on several boards, and where he was personally served with process in this action several weeks ago. Instead, Mr. Liveris contends that this Court is without power to hear Mr. Reinhard's case because, he claims, there is no statutory basis for venue in this district. Mr. Liveris' motion is meritless for at least two independent reasons. First, Mr. Liveris concedes in his motion that he is not a United States citizen, and thus under the venue statute he can be sued in any district in the United States.

2

Second, Mr. Reinhard's suit arises directly from the publication and circulation of defamatory statements in this district, a circumstance which courts have recognized is a proper basis for venue.

Facts

The facts set forth below are based on (i) Mr. Reinhard's complaint, attached as Exhibit A to the declaration of Gary P. Naftalis of Kramer Levin Naftalis & Frankel LLP, counsel to Mr. Reinhard, (ii) Dow's amended complaint filed in Michigan (Naftalis decl., Exh. B), (iii) Dow's answer and counterclaims filed with this Court (Naftalis decl., Exh. C), (iv) the complaint against Dow and Mr. Liveris brought by another former Dow executive, Romeo Kreinberg (Naftalis decl., Exh. D), (v) background facts set forth in Mr. Naftalis' declaration, and (vi) the declaration of Mr. Reinhard.

A.    Mr. Reinhard's exemplary, thirty-seven-year career at Dow

Mr. Reinhard enjoyed an exemplary and highly successful career with Dow. He spent thirty-seven years as an active executive at the Company serving in a variety of positions of increasing responsibility. In 1995, Dow appointed Mr. Reinhard Chief Financial Officer. During his ten-year tenure as CFO, Mr. Reinhard was twice voted Best CFO in America for the chemicals/commodity industry in Institutional Investor Magazine's annual survey of industry analysts. In 1995, Mr. Reinhard was also elected to Dow's Board. In 1996, Mr. Reinhard was elected to the additional position of Executive Vice President, a position he held until his retirement in 2005. (Complt. ¶¶ 14-15).

During the last ten years, Mr. Reinhard has been annually re-nominated by Dow's Governance Committee as a director. (*Id.* at ¶ 16). In addition, given his mature and seasoned judgment, intimate knowledge of a board's role, responsibilities, processes and procedures, and high ethical standards, Mr. Reinhard has been highly sought after by, and has served on, the

boards of other major public companies. In total, Mr. Reinhard has approximately twenty-five years of service as a public board director, including service on corporate-governance and other committees. (*Id.* at ¶¶ 16-17).

B.    Defendants' false and malicious statements about Mr. Reinhard

Following several months of rumors that Dow was the target of a buyout effort, on April 9, 2007 Dow's Chairman and CEO Liveris met with the CEO of a major New York-based investment bank. As alleged by Mr. Kreinberg in his complaint, and as is undisputed by Dow, the CEO was James Dimon, of J.P. Morgan Chase. (Naftalis decl., Exh. D at ¶ 56). At that meeting, Mr. Liveris discussed the rumors with Mr. Dimon, who revealed that the bank's London affiliate had been involved in the buyout effort. (*Id.* at ¶57). Three days later, Mr. Reinhard was called into Mr. Liveris' office, accused of violating his fiduciary duties to Dow, and, despite Mr. Reinhard's vehement denial that he had done anything improper, summarily dismissed without any chance to see or rebut the purported evidence. The company immediately cut off Mr. Reinhard's access to his email, calendar, and computer. (Reinhard decl., ¶ 9). Dow also terminated without notice Mr. Reinhard's benefits, including his pension and health insurance. (Complt. ¶¶ 25-27).

Over the next week, defendants asserted in statements to *The New York Times*, *The Wall Street Journal*, *Financial Times*, and elsewhere that Mr. Reinhard had among other things been involved in "highly inappropriate" business activity, engaged in a "clear violation of Dow's Code of Business Conduct," and "made a tragic mistake." Defendants issued several statements to this effect after Mr. Reinhard had released his own public statement on April 16 denying Dow's allegations. Among these were statements contained in a supplement to Dow's proxy statement, which Dow circulated to shareholders in New York and elsewhere, and which bore the return address of Dow's transfer agent located in New York. Defendants did not afford

4

Mr. Reinhard the opportunity to review – much less respond to – the purported "evidence" against him. (*Id.* at ¶¶ 28-37).

According to Dow, defendants' actions were based entirely on information Mr. Liveris received during the April 9 meeting and in two subsequent telephone calls with Mr. Dimon. Indeed, Mr. Liveris has publicly claimed that Mr. Dimon provided him with "irrefutable" evidence that Mr. Reinhard had engaged in "multiple meetings in multiple months in multiple locations" with a number of different parties, in a covert effort to acquire the Company. (Naftalis decl., Exh. E). Defendants allege that Mr. Reinhard was part of a scheme that also included Mr. Kreinberg, a thirty-year Dow veteran, who like Mr. Reinhard was terminated on April 12, based, Dow claims, on the information supposedly provided by Mr. Dimon. (Naftalis decl., Exh. B at ¶¶ 37-45).

In fact, however, Mr. Reinhard was not part of any such scheme, as Dow well knows. On information and belief, the information provided to Mr. Liveris by Mr. Dimon fell far short of what Mr. Liveris publicly claimed it was. (Naftalis decl., Exh. D at ¶¶ 57-58). And Mr. Reinhard at all times complied with his fiduciary duties to the Company. Rather, the termination and defamation of Mr. Reinhard was, upon information and belief, driven by Mr. Liveris' ulterior motives. Mr. Liveris viewed Mr. Reinhard – who was among Dow's longest-tenured directors, an employee of thirty-seven years experience, and a former CFO – as a hindrance to his influence over the Company and its Board, due to the respect Mr. Reinhard commands as an expert in the chemicals industry and his willingness to stand up to Mr. Liveris when he believes it to be in the best interest of Dow's shareholders. (Complt. ¶¶ 18-20).

KL3 2601740.3

C.    In the midst of settlement discussions with Mr. Reinhard in New York, Dow attempts to
preempt Mr. Reinhard's defamation action by filing a lawsuit in Michigan

When Mr. Liveris called Mr. Reinhard into his office on the morning of April 12 to accuse him of wrongdoing, he first requested that Mr. Reinhard quietly resign and offered to pay to Mr. Reinhard all his vested and unvested benefits, worth tens of million of dollars, if he did so. Mr. Reinhard refused, for he had done nothing wrong. Over the next three weeks, after Mr. Reinhard retained counsel, Dow discussed with counsel the possibility of reaching an agreement that would resolve the matter. It had been Mr. Reinhard's hope that he would be able to vindicate both his substantial economic and reputational rights without commencing litigation. By early May, when no such resolution seemed likely, counsel had completed drafting Mr. Reinhard's complaint, and Dow knew counsel was prepared to file suit shortly on Mr. Reinhard's behalf. On May 7, counsel received a settlement proposal from Dow. In light of Dow's settlement proposal, it was agreed that Mr. Reinhard's counsel, Dow, and counsel for Mr. Kreinberg, who had also received a settlement proposal from Dow on May 7, would speak at 11 a.m. on May 8 concerning these proposals. Shortly before the scheduled call, however, we were advised by Dow that the call would not take place. Thereafter, Mr. Reinhard immediately filed his suit in New York on the morning of May 8. We later learned that Dow had filed a lawsuit earlier that morning in Michigan against both Messrs. Reinhard and Kreinberg. (Naftalis decl. ¶¶ 2-4).

In his suit filed with this Court, Mr. Reinhard seeks to recover against Dow and Mr. Liveris for their pattern of libelous statements, and against Dow for breach of contract relating to compensation and benefits the company has improperly denied to him since he was terminated. Most importantly, Mr. Reinhard seeks to repair the damage to his reputation by

6

demonstrating that defendants had no basis to accuse him of participating in a secret effort to take over Dow.  (Complt. ¶¶ 43-57).

Dow's complaint in Michigan alleges Mr. Reinhard breached his fiduciary duties to the Company by joining in an unauthorized takeover effort, and by not revealing to Dow's Board his supposed involvement.  In addition to seeking damages for breach of fiduciary duties, Dow seeks damages and declaratory relief based on various contractual provisions governing Mr. Reinhard's compensation and benefits.  (Naftalis decl., Exh. B at ¶¶ 59-84).  On May 16, Dow amended its Michigan complaint to add a claim seeking a declaration that Mr. Reinhard forfeited his pension benefits and that Dow is not required by ERISA to notify Mr. Reinhard of his COBRA rights.  (*Id.* at ¶¶ 85-90).

On May 29, Dow answered Mr. Reinhard's complaint in New York, asserted as counterclaims essentially the same claims it has pleaded in Michigan (Naftalis decl., Exh. C), and filed the present motion to transfer Mr. Reinhard's case to the Eastern District of Michigan (Bay City).  On June 19, having been served with Mr. Reinhard's complaint while in Manhattan, Mr. Liveris filed his motion to dismiss or transfer Mr. Reinhard's suit for lack of venue.

<u>Argument</u>

Point 1
DOW HAS NOT MET ITS HEAVY BURDEN OF
<u>DEMONSTRATING THAT THIS ACTION SHOULD BE TRANSFERRED</u>

A.     <u>Mr. Reinhard's chosen forum is entitled to substantial deference</u>

Section 1404(a) of Title 28 provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Though "motions for transfer lie within the broad discretion of the district court," a court "must give substantial consideration to the plaintiff's choice of venue."  *Hill v. Golden Corral Corp.*, No. 98-CV-7872 (JG), 1999 WL

7

342251, at *2 (E.D.N.Y. May 21, 1999). The United States Supreme Court, as well the courts of this Circuit, have long recognized that a plaintiff's choice of forum is entitled great weight and will be disturbed only in extremely rare and exceptional circumstances. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (citing *Gilbert*).

Thus, "[t]he burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendants make a *clear and convincing* showing that the balance of convenience favors defendants' choice." *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (citations and quotation marks omitted; emphasis added).[1]

Dow concedes that the burden of demonstrating that transfer is in the interests of justice is on the moving party. (Dow Br. at 7, 14). Dow nevertheless seeks to evade this rule and undo Mr. Reinhard's choice of forum by asserting that its action in Michigan is the "first-filed" lawsuit, and thereby entitled to priority. *Id.* The law in this Circuit, however, does not support the application of the first-filed rule in this case. Rather, the rule has no application when, as here, competing suits are filed the same day (indeed, the same morning) or just days apart. *See JewelAmerica v. Frontstep Solutions Group, Inc.*, No. 02-CV-1328 (RO), 2002 WL 1349754, at *1 n.1 (S.D.N.Y. June 20, 2002) (denying motion to dismiss case in favor of Ohio action filed one day earlier and noting that "[t]he bulk of the precedent in this circuit is that the

---

[1]    This standard applies even when the plaintiff, like Mr. Reinhard, has brought suit in a forum in which he does not reside. *See Hispanic Business, Inc. v. Hispanic Pub. Co.*, No. 97-CV-01557 (RPP), 1997 WL 681315, at *1 (S.D.N.Y. Oct. 31, 1997) (noting that even when the plaintiff has not brought suit in his home forum, "[t]he defendant has a burden of showing, by clear and convincing evidence, that transfer is proper").

8

first filed rule is usually disregarded where the competing suits were filed only days apart");

*Elbex Video, Ltd. v. Tecton, Ltd.*, No. 00-CV-0673 (LMM), 2000 WL 1708189, at *3 (S.D.N.Y.

Nov. 15, 2000) (denying motion to transfer where suit filed in New York four days later than suit

in California and noting that "when the filing date difference between two parallel actions is de

minimus, the Court has the discretion to disregard the first-filed doctrine altogether");  *In re*

*Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995)

(denying motion to transfer where suits filed on the same day and noting that the first-filed rule

"is usually disregarded where the competing suits were filed merely days apart. Here, because

the lawsuits were both filed on the same day, the first-filed rule is inapplicable").

        Courts in our Circuit have also refused to accord "first-filed" status to litigants

like Dow who have filed anticipatory suits in the midst of settlement negotiations, while the

other party is still negotiating in good faith. *See Elbex*, 2000 WL 1708189, at *2; *Ontel*

*Products*, 899 F. Supp. at 1151 ("[As far as] 'second-filers' are concerned, the first-filed rule

should operate so as to benefit those parties who were prepared, and had every intention, to

pursue foreseeable legal action but failed to bring suit first due solely to their attempt to settle the

matter without court involvement"); *Robeson v. Howard University*, No. 00-CV-7389 (GBD),

2002 WL 122913, at *3 (S.D.N.Y. Jan. 30, 2002).  In this case, Mr. Reinhard's counsel had

drafted a complaint and was prepared to commence litigation.  To spare the Court the need to

adjudicate this dispute, Mr. Reinhard refrained from suing and proceeded in good faith with

settlement negotiations.  As noted at page 6 above, Dow made settlement offers to both Messrs.

Reinhard and Kreinberg on May 7, and counsel agreed to discuss the offers the following day.

Dow then called off those talks on May 8, the day it commenced its action in Michigan.

Dow's complaint in Michigan – which requests declaratory relief in three of five counts – is a classic anticipatory lawsuit, brought to preempt an expected action elsewhere and thereby thwart the true plaintiff's choice of forum. *Cf. Elbex*, 2000 WL 1708189, at *3 ("The facts indicate that [the plaintiff in New York] is the true plaintiff in this dispute, and that [the defendant in New York] filed the declaratory judgment action in California in order to deprive plaintiff of its choice of forum"). For example, the Dow complaint seeks a declaration that Mr. Reinhard must return to Dow equity awards he earned during his last three years at the Company. (Naftalis decl., Exh. B at ¶¶ 75-79). Yet prior to filing suit, Dow never asked that Mr. Reinhard do so, nor did Dow inform Mr. Reinhard that he had violated any relevant contractual provisions. (Reinhard decl., ¶ 4). Instead, when Dow asked Mr. Reinhard to resign on April 12, Dow told him that if he resigned quietly the Company would pay him all his vested and unvested compensation and benefits worth tens of million of dollars. (*Id.* at ¶ 3). It was only when Mr. Reinhard refused to resign and made clear that he would sue unless the company was willing to repair the harm it had inflicted on his reputation that Dow cobbled together its own complaint and sued preemptively in Michigan.

Rather than reward Dow's procedural gamesmanship, the Court should reject Dow's effort to invoke the first-filed rule and instead require Dow to make the clear and convincing showing necessary to rebut the presumption typically afforded to plaintiff's chosen forum. As set forth below, Dow cannot make that showing.

B.    Dow has fallen far short of a clear and convincing showing that the
      Eastern District of Michigan is the more appropriate forum

In the key inquiry on a transfer motion is whether the proposed transfer will promote convenience and fairness. *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). The case law "does not require that the litigation be conducted in the

10

most convenient forum for the defendant, only that the forum not be unreasonably inconvenient or otherwise inconsistent with the interests of justice." *Rockshots, Inc. v. Comstock Cards, Inc.*, No. 87-CV-3453 (CSH), 1990 WL 74514, at *4 (S.D.N.Y. May 29, 1990). Courts consider several factors: (1) plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of the operative facts, (6) the availability of process to compel attendance of unwilling witnesses, (7) the relative means of the parties, (8) a forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice. *See Orb Factory*, 6 F. Supp. 2d at 208. Applying these factors here leaves no doubt: the Court should not disturb Mr. Reinhard's choice of forum.

1.   Plaintiff's choice of forum: Mr. Reinhard, as plaintiff, should be permitted to vindicate his reputation in the center of the nation's business and financial community

As demonstrated at pages 7-9 above, when a court adjudicates a transfer motion, due deference must be given plaintiff's choice of forum, "which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 57 (S.D.N.Y. 2001). Mr. Reinhard's chosen forum should be accorded significant deference not only because he is the plaintiff, but also because fairness requires that he be permitted to counter defendants' allegations in the forum where they have done him the most harm. Mr. Reinhard's reputation has been most severely damaged in New York, where he serves as a director of Colgate-Palmolive and where he travels frequently from his home state of Florida. Indeed, Dow and Mr. Liveris provided statements to *The New York Times*, *The Wall Street Journal*, and other major New York-based publications, no doubt with the intent of maximizing their impact on the nation's financial community. Additionally, Dow's supplemental proxy notice, which repeated Dow's defamatory allegations, was sent from

11

KL3 2601740.3

and circulated to Dow shareholders in New York. Dow should not now be permitted to prevent Mr. Reinhard from clearing his name in this district, where his suit will have the greatest chance of repairing the harm defendants have inflicted on his reputation.

2.    Location of witnesses: New York is the
more convenient forum for the key witnesses

Dow contends that "Michigan is a far more convenient forum for a majority of the witnesses" because "virtually every potential Dow employee witness works at Dow's headquarters in Michigan." (Dow Br. at 10). Leaving aside that many potential witnesses listed by Dow are not key players in the events at issue in this litigation, *see id.* (listing, for example, Dow's human resources personnel and Mr. Reinhard's assistant), it cannot be credibly asserted that Dow, one of America's most powerful corporations, could not easily make available its employees in New York. *See* 15 Charles Alan Wright, Arthur Miller, and Edward H. Cooper, *Federal Practice & Procedure* § 3851 (2d ed. 1986 & cum. supp.) ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial.") Dow has litigated many cases in New York (Naftalis decl., Exh. F) – cases which presumably required the company to bring the relevant employees to New York. There is no reason why Dow cannot do so here.

Moreover, New York is a convenient forum for the key witnesses in this litigation. Mr. Reinhard's defamation and contract actions turn in substantial part on whether defendants' allegations concerning Mr. Reinhard's involvement with takeover efforts were false (as will become clear in the course of this litigation), and on defendants' state of mind when they made these statements. While Mr. Liveris resides in Michigan, he travels frequently to New York, where he sits on a number of boards, including the Citigroup board (*see* Naftalis decl., Exh. G), and regularly conducts Dow-related business. The same is true for many of Dow's

12

directors, who, apparently based on Mr. Liveris' false representations, voted to fire Mr. Reinhard, remove him from the board, and issue a defamatory press release. At least four (including Mr. Liveris) serve as directors or trustees of New York-based companies and institutions, and two appear to live or work close by, in the Washington, D.C.-area. (*See id.*, Exh. G).

Significantly, Dow claims that Mr. Liveris and Dow's board acted on information received from James Dimon, CEO of JP Morgan Chase. New York is far more convenient than is Bay City, Michigan for Mr. Dimon, arguably the most important non-party witness in the litigation, and the other J.P. Morgan Chase executives and employees whose testimony will be crucial to the adjudication of this case. In a footnote, Dow concedes that New York is the most convenient forum for Mr. Dimon, who works in New York. (*See* Dow Br. at 10-11 n.3 ("One third-party witness – a senior executive from the financial institution who confirmed Reinhard's wrongdoing to Dow (see Dow Am. Cplt. ¶37) – may work in New York . . . ."). Employees of J.P. Morgan Chase – whether based in New York or London – who were involved in any J.P. Morgan's work on a potential takeover of Dow are also without question more conveniently situated to New York City, where J.P. Morgan Chase is headquartered, than they are to Michigan, where Dow has brought suit.

In short, this factor weighs heavily in Mr. Reinhard's favor, and thus *a fortiori* Dow has not made a clear and convincing showing that the Eastern District of Michigan is more convenient for key witnesses than the Southern District of New York. *See Telebrands Corp. v. Wilton Indus., Inc.*, 983 F. Supp. 471, 478 (S.D.N.Y. 1997) ("Where the convenience of the parties and witnesses does not appear to favor one district over the other, plaintiff's choice of forum should not be disturbed" (citation omitted)).

13

3.    The location of relevant documents and the relative ease of access to
sources of proof:  Dow has made no showing that producing documents
<u>in New York will impose a material burden on the Company</u>

While recognizing that "the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailed documents," Dow claims that this factor should hold "at least some significance here [in Dow's favor] given the stark contrast between the relevant evidence in Michigan as compared to New York." (Dow Br. at 11).  Dow makes this claim despite the fact that courts in this Circuit have routinely held that "[a] defendant's assertion that documents are located in the transferee forum is entitled to little weight in the absence of a detailed showing as to the burden that defendant would incur in the absence of transfer." *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00-CV-1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y Sept. 13, 2000).  The company asserts that it expects the documentary evidence to include Mr. Reinhard's documents and emails as well as those of Dow-employee witnesses, board minutes, and press releases.  But Dow does not contend that requiring the company to produce these documents in New York would impose any material burden on the company.  Nor could Dow make such a claim given the company's size and resources. *See Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196, 200 (E.D.N.Y. 1998) (finding that the defendant "fail[ed] to demonstrate that this factor tips in favor of transfer" where defendant did not supply a supporting affidavit detailing the nature, extent, volume, or relevance of documents it claimed were located in alternate forum).  And Dow neglects to mention that emails and other documents in the custody or control of JP Morgan Chase, based in New York, will also likely be considered as evidence in this action.  Dow has therefore not shown that this factor weighs clearly in favor of a transfer to the Eastern District of Michigan.

14

4.    The locus of the operative facts: Mr. Reinhard has been
harmed by defamatory statements published by defendants
in New York, the nation's business and financial capital

Dow is wrong in arguing that "the present action has no meaningful connection to

the district." (Dow Br. at 2). In fact, many of the operative events occurred in New York.

Defendants' defamatory statements were made to and disseminated in newspapers like *The New*

*York Times* and *The Wall Street Journal* that are published in and widely read in New York City,

where the country's major financial markets and media outlets are located. Dow's supplemental

proxy notice emanated from and was circulated to Dow shareholders in this district. It is

accordingly in this district that the tort of defamation largely occurred and where Mr. Reinhard's

reputation has been harmed most significantly. *See Jaffe v. Dolan*, 264 F. Supp. 845, 848

(E.D.N.Y. 1967); 1A *Federal Procedure, L. Ed.*, § 1:751 ("A claim for libel or slander arises in

the state where it is published."); *see also Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331

(S.D.N.Y. 1998) (noting, in context of trademark infringement, antitrust, and unfair competition

case, that although allegedly infringing products were manufactured elsewhere, they were "sold

in the Southern District of New York (as well as throughout the country)" and "[t]herefore, New

York has a significant connection with this dispute").

On the other hand, the connection between the underlying facts of Mr. Reinhard's

suit and Michigan is far from clear. The crux of the dispute is the truth or falsity of defendants'

assertions that Mr. Reinhard engaged in "multiple meetings in multiple months in multiple

locations" with a number of different parties, in a purportedly covert and unauthorized effort to

acquire the Company. Dow has not alleged that any such meeting occurred in Michigan. The

mere fact that Dow is headquartered in Michigan does not mean the case is centered there,

particularly since Mr. Reinhard has not lived in Michigan since his retirement as an active officer

of Dow in 2005. (Reinhard decl., ¶ 6).

15

5.   The availability of process to compel attendance of unwilling witnesses: The
most important non-party witness is subject to process in New York

Dow maintains that this factor is "neutral as between the forums" (Dow Br. at 13),

which, given the presumption afforded to plaintiff's choice of forum, *see* pages 7-9 above,

effectively concedes that Mr. Reinhard should not lose that choice for reasons relating to the

availability of process.   In any event, Dow concedes that "one financial institution witness" –

presumably a reference to Mr. Dimon – works in New York, and "hence could be beyond the

subpoena power of the Michigan court." *Id.*   And Mr. Dimon is the single most important non-

party witness in this case, as he is claimed to be the sole source for defendants' pattern of

libelous statements.   Thus, the presence of Mr. Dimon in New York is yet another reason why

the case should go forward in this district. *See e.g., Citigroup Inc. v. City Holding Co.*, 97 F.

Supp. 2d 549, 561 (S.D.N.Y. 2000) ("The availability of compulsory process over material non-

party witnesses is an important factor" in determining whether to transfer a case pursuant to §

1404(a)).   Mr. Reinhard should not be denied the opportunity to compel the testimony of this

crucial witness or be forced to rely on deposition transcripts or video recordings of Mr. Dimon's

testimony at trial merely because Dow would prefer to litigate in its home forum.[2]

---

[2]      Dow cites *Dealtime.com v. McNulty,* 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000), for the
proposition that "courts have noted that, in the context of Section 1404(a) transfers, the
availability of process does not 'tip the balance' with regard to the choice of forum, particularly
where the testimony of such witnesses may be obtained by videotape or deposition." (Dow Br.
at 13).   But in that case, the court found that this factor did not justify *transfer away from* the
plaintiff's chosen forum so that the defendant could litigate in a forum with subpoena power over
certain non-party witnesses. *Dealtime.com*, therefore, does not support Dow's present motion,
where Dow as defendant is the party seeking transfer, and where the court to which Dow seeks to
move Mr. Reinhard's case is the forum *lacking* the power to compel a key witness' testimony.

16

6.    Convenience of the parties: New York is a convenient forum for all parties

It is far more inconvenient for Mr. Reinhard to litigate in Michigan than it is for Dow to litigate in New York.

Dow contends that "there is no indication that New York is a particularly convenient forum for Mr. Reinhard, who neither works nor lives there." (Dow Br. at 9). But Mr. Reinhard chose to bring his suit in this district not only because he has been harmed here, but also because New York is a significantly more convenient forum for him than is Bay City, Michigan. Mr. Reinhard lives in Florida but travels to New York at least once a month to attend board meetings at the Colgate-Palmolive Company and to transact other business. Now that he has been terminated from Dow, Mr. Reinhard no longer has any routine plans or reasons to travel to Michigan. (Reinhard decl., ¶ 6). Moreover, his counsel is located here in New York. Against this backdrop, to require Mr. Reinhard to travel to Michigan to litigate this case would impose on Mr. Reinhard a substantial and unwarranted inconvenience. (*Id.* at ¶ 5-8).

In sharp contrast, New York is a very convenient forum for Dow. A $50 billion-dollar corporation with global reach, Dow has litigated many cases in New York during the last five years, including several as plaintiff. (See Naftalis decl., Exh. F). There is no suggestion that requiring the defendants to litigate in this district will impose any burden on Dow or Mr. Liveris, let alone a substantial one. Mr. Liveris, as noted above, travels to New York on a regular basis. Furthermore, both Dow and Mr. Liveris are represented in this action by counsel from Kirkland & Ellis' New York office. And Dow admitted in its Answer to Mr. Reinhard's complaint that "Dow employs bankers and advisers in New York; Dow has customers in New York; and Dow executives travel to New York for business." (Naftalis decl., Exh. B at ¶10).

17

7.    The relative means of the parties: Requiring Mr. Reinhard
      to litigate in Michigan would materially increase his litigation costs

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Berman v. Informix Corp.*, 30 F.Supp. 2d 653, 659 (S.D.N.Y. 1998). Arrayed against Mr. Reinhard in this case are the unlimited resources of one of the country's most powerful companies. Already, Dow (i) has brought the full weight of its public relations machine to bear on Mr. Reinhard, (ii) has denied Mr. Reinhard access to his email, calendar, and other work-related material, and (iii) cut off Mr. Reinhard's compensation, benefits, and health insurance. (Reinhard decl., ¶ 9). Dow has even failed to advance fees to Mr. Reinhard in connection with the suit Dow filed against him, despite Dow's clear obligation to do so under its bylaws and Delaware law – forcing Mr. Reinhard to expend additional funds to bring a litigation in Delaware against Dow to vindicate his legal entitlement to advancement of fees. (Naftalis decl., Exh. H).[3]

Finally forcing Mr. Reinhard to hire local counsel in Michigan and pay New York-based trial counsel to travel to that forum would further strain Mr. Reinhard's resources (Reinhard decl., ¶ 8) – yet another reason why Mr. Reinhard's suit should be permitted to go forward here.

8.    Familiarity with the governing law:  Michigan law will govern
      few if any issues

Dow errs in arguing that "Michigan law, rather than New York law, will be more relevant to [Mr.] Reinhard's claims given, for example, that the alleged agreements at issue would have been entered in Michigan." (Dow Br. at 11). First, it is far from clear that Michigan law will apply to Mr. Reinhard's defamation claim. *See Zerman v. Sullivan & Cromwell*, 677 F.

---

[3]    Even after publicly acknowledging its obligation to advance fees (Naftalis decl., Exh. I), Dow continues to insist on onerous, unprecedented, and inappropriate conditions.

Supp. 1316, 1318 (S.D.N.Y. 1988) (noting that, in context of libel action, applicable law will typically be law of plaintiff's domicile unless, "with respect to the particular issue, some other state has a more significant relationship to the issue or the parties"). Second, Dow concedes that Delaware and not Michigan law will likely apply to the Company's fiduciary duty counterclaims. (Dow Br. at 11). Third, several of what appear to be the relevant agreements and plans contain Delaware choice-of-law provisions. (*See e.g.*, Naftalis decl., Exh. J at 4). Because the burden rests with Dow to show that transfer is warranted, and because Dow has not shown that this Court will likely apply Michigan law to any aspect of Mr. Reinhard suit, this factor weighs in Mr. Reinhard's favor.

9.    Trial efficiency and the interests of justice:
<u>New York is the more efficient and just forum</u>

Dow maintains that transferring Mr. Reinhard's suit to Michigan will serve the "interest of judicial economy" and avoid the possibility of inconsistent decisions. (Dow Br. at 12). Of course, staying Dow's action in Michigan or transferring that case to New York would serve the same interests, and Dow's action should not be deemed a first-filed action entitled to preference. *See* pages 9-10 above. Indeed, Dow has already answered Mr. Reinhard's complaint in New York and asserted as counterclaims the same claims the company has brought in Michigan. At this stage in the litigation, it would be more efficient for the Court to deny Dow's transfer motion and allow this case to proceed in New York.[4]

---

[4]    Mr. Reinhard moved to enlarge his time to answer in Michigan pending the outcome of this motion. The Court in Michigan denied that application (Naftalis decl., Exh. K), and Mr. Reinhard has answered the complaint, asserting among other defenses that, pursuant to 28 U.S.C. § 1404, the action should be stayed or transferred. (Naftalis decl., Exh. L). In the event this Court denies defendants' motions, Mr. Reinhard would move to stay or transfer the Michigan action.

Also pending in this district is a suit by Mr. Kreinberg, who has his own counsel, against Dow and Mr. Liveris; Dow removed that case to federal court on May 29. (Naftalis decl., Exh.

19

C.    Mr. Liveris' motion to transfer
      should likewise be denied

       Mr. Liveris has joined in Dow's motion to transfer pursuant.  Yet he does not assert any specific reason why litigating in this district would be inconvenient or burdensome. Nor did he submit an affidavit in support of his transfer motion.  *Cf. Orb Factory, Ltd. v. Design Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) ("The movant [under § 1404] must support the transfer application with an affidavit containing detailed factual statements relevant to the factors to be considered by the court in its transfer decision . . . ." (internal quotation marks and citations omitted)).  Thus, Mr. Liveris' motion to transfer should be denied for the same reasons that Dow's motion should be denied, and for the addition reason that he has not set forth any facts explaining why litigation in New York is inconvenient.

Point 2<br>MR. LIVERIS' OBJECTION TO VENUE IS MERITLESS

       According to Mr. Liveris, venue is not proper in the Southern District of New York under § 1391(a), and therfore the claims against him should either be dismissed or transferred to Michigan under § 1406(a).  In a striking error, Mr. Liveris has overlooked the fact that, because he is not a United States citizen, he is outside the operation of the venue restrictions imposed by the venue statute.  Under § 1391(a), venue is thus proper in any district in which suit could have been brought against Dow alone.  Dow has waived any assertion of improper venue by failing to raise this defense, and in any event Dow is a resident of New York for venue purposes and therefore as such subject to suit in this district.  Mr. Liveris' motion to dismiss or transfer for lack of venue is thus meritless.

---

M).  There is no reason why discovery in the two cases cannot be coordinated.  Dow's allegation that Mr. Reinhard filed this action in the Southern District of New York for the purpose of "fraction[ating] at what should be one case into at least two cases" is false, and Dow offers no facts supporting its wild assertions.  (Dow Br. at 1).

20

A.    Venue is proper in this district because Mr. Liveris is an alien and Dow has either waived its objection to venue or is subject to suit under 28 U.S.C. § 1391(a)(1)

As Mr. Liveris concedes in his motion, he is a an alien: a citizen of Australia and a lawful permanent resident of the United States. (Liveris Br. at 4; *see also* Naftalis decl., Exh. C at ¶ 11). Section 1391(d) provides that "[a]n alien may be sued in any district."[5] The Supreme Court has held that § 1391(d) "is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *Brunette Mach. Works, Ltd. v. Kockum Indus.*, 406 U.S. 706, 714 (1972). Given this rule, it follows that "[i]f an alien is joined as a defendant with one or more non-alien defendants, then venue is proper in any district in which the suit could have been brought against the non-alien defendant alone." 14D *Federal Practice & Procedure* § 3810; *see also Osis v. 1993 GF Partnership, L.P.*, No. 99-CV-0797 (AVC), 2000 WL 840050, at *5 (D. Conn. March 31, 2000) ("When defendants include both aliens and non-aliens, venue is only appropriate in the district where the suit could have been brought if none of the aliens were part of the suit"); *In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678, 683 (E.D. Tex. 1999) ("When an alien and a non-alien are joined as defendants, venue for the entire action is proper in any district where it is correct as to the non-alien defendant" (internal quotation marks omitted)).

There is no question that venue is properly laid in this district with respect to Dow, the only non-alien defendant in this case. Dow has waived any argument as to venue

---

[5]    As a resident alien, Mr. Liveris is still an "alien" within the meaning of § 1391(d). *See Haaretz Daily Newspapers, Ltd., et al. v. Chani Inc.*, No. 98-CV-2878 (JGK) (JCF), 1999 WL 796163, *1 (S.D.N.Y. Oct. 6, 1999) ("1391(d) by its terms controls venue for all 'aliens.' It thus draws the line between aliens and citizens, not between resident aliens and non-resident aliens."); *Expotrade, Ltd. v. Dominguez*, 470 F. Supp. 179, 180 (D. Colo. 1979) ("As a resident alien, defendant may be sued in any district").

under § 1391 because the company has answered Mr. Reinhard's complaint without raising a venue defense. *See* Fed. R. Civ. P. 12(h)(1). Furthermore, as Mr. Liveris himself notes, Dow resides in New York for purposes of determining venue (*see* Liveris Br. at 4 n.2, citing 28 U.S.C. § 1391(c)), and thus venue is proper with respect to Dow under § 1391(a)(1).[6]

B.    Venue is proper in this district under 28 U.S.C. § 1391(a)(2)

Even if Mr. Liveris were not an alien, his motion would be meritless for the additional reason that venue is properly laid in the Southern District of New York under § 1391(a)(2). Subsection (a)(2) provides that a diversity action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Notwithstanding the express language of the statute, Mr. Liveris argues that § 1391(a)(2) "can be utilized as a basis for venue only when all defendants do not reside in one state," in other words when venue would not be proper in another district under § 1391(a)(1)." He goes on to assert that the statute is inapplicable because he and Dow both reside in Michigan. (Liveris Br. at 5). Mr. Liveris cites in support of this proposition *Dashman v. Peter Letterese &*

---

[6]    Section 1391(a)(1) provides that a diversity action may be brought in "any district where any defendant resides, if all defendants reside in the same state." When there is only one defendant – as there effectively is in this context because Mr. Liveris is an alien – venue is proper wherever that one defendant resides. *See Day Village Ltd. Partnership v. CW Capital L.L.C.*, No. 06-CV-3424 (LTS) (HBP), 2006 WL 2572118, at *2 (S.D.N.Y. Sept. 7, 2006).

Given that Mr. Liveris, as an alien, is "wholly outside the operation of all the federal venue laws," *Brunette*, 406 U.S. at 714, and that § 1391(a) is the relevant venue provision as to Dow (the only non-alien defendant in the case) the complaint's citation of subsection (a) alone is appropriate. In any event, it is well-established that a plaintiff is under no obligation to "include allegations [in the complaint] showing that the district in which the action has been brought is one of proper venue under a particular statutory provision." 14D *Federal Practice & Procedure* § 3826. This follows from the rule that venue, unlike jurisdiction, need not be pleaded by a plaintiff at all. Advisory Committee Note 3 to Official Form 2, appended to the Federal Rule of Civil Procedure ("Since improper venue is a matter of defense, it is not necessary for plaintiff to include allegations showing venue to be proper").

22

*Assocs.*, 999 F. Supp. 553 (S.D.N.Y. 1998), which disregarded the plain language of §

1391(a)(2) in favor of an interpretation based on the "historical context" of the statute.

Mr. Liveris omits to mention that courts have subsequently rejected *Dashman*. In

*I.M.D. USA, Inc. v. Shalit*, for example, Judge Kaplan found that the language of § 1391(a)(2) is

"crystal clear," that *Dashman* was wrongly decided, and that the subsection applied regardless of

whether the defendants reside in the same state. 92 F. Supp. 2d 315, 316-17 (S.D.N.Y. 2000).

*See also Hall v. South Orange*, 89 F. Supp. 2d 488, 492-92 (S.D.N.Y. 2000) (rejecting reasoning

of *Dashman* in context of § 1392(b), the parallel venue provision for federal question cases). A

leading commentator characterized the interpretation accorded the statute in *Dashman* as

"against the plain language of the statute and the great weight of authority," and concluded that

venue can be laid under subsection (a)(2) regardless of whether the defendants reside in the same

state. 14D *Federal Practice & Procedure* § 3804. If this Court finds it necessary to reach this

question, then it should reject Mr. Liveris' argument that Mr. Reinhard cannot rely on §

1391(a)(2) for venue in this district.

As a fallback, Mr. Liveris contends that "[e]ven if § 1391(a)(2) could be

considered as a basis for venue here, Reinhard in any event cannot establish venue under that

subsection because 'a substantial part of the events or omissions giving rise to the claim' did not

occur in this District." (Liveris Br. at 6). According to Mr. Liveris, "[t]he case is centered in

Michigan." (*Id.*) By this argument, Mr. Liveris overlooks that the basis for Mr. Reinhard's

defamation claim is that defendants widely distributed their false and malicious statements in this

district by publication in the financial press and Dow's supplemental proxy notice, and that Mr.

Reinhard's reputation in the business community was most significantly damaged in New York,

where he sits on the board of Colgate-Palmolive. Mr. Liveris cites one case to support his

argument in this regard, *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005), an antitrust class-action dealing with venue under the federal question provision, § 1391(b)(2).   In *Daniel*, the plaintiff class brought an antitrust action against twenty-eight hospitals, two other organizations, and numerous individuals, alleging restraint of trade in the market for doctors in the emergency-medicine field.   The court found that venue under § 1391(b)(2) was not proper in the Western District of New York because plaintiffs' claim to venue was based solely on the mailing into that district, by just one of the named defendants, of six of 176 letters that were themselves an "insignificant" part of the events given rise to the case. *See* 428 F.3d at 433-34.   *Daniel* thus has no relevance to Mr. Reinhard's suit, where Mr. Reinhard has brought a defamation claim arising directly from statements defendants circulated in this district and which badly damaged Mr. Reinhard's reputation here.

Again, Mr. Liveris has failed to address the case law that is relevant to Mr. Reinhard's action.   In *Wachtel v. Storm* – a defamation suit based on publication of the defendant's letter in a magazine – the court held that venue was proper in this district under § 1391(a)(2) because the letter had made mailed to and published in New York, events which were "crucial to the plaintiff's cause of action for defamation."   796 F. Supp. 114, 116 (S.D.N.Y. 1992).   Similarly, in *Delcath Systems, Inc. v. Enney*, the court found venue proper under § 1391(a)(2) in the District of Connecticut where the defendant had, via facsimile, email, and telephone, transmitted into that district messages which formed the basis for the plaintiff's claims of defamation and other tortious harm.   No. 05-Cv-1281 (JCH), 2006 WL 1525986, at *4 (D. Conn. May 26, 2006).   It is undisputed that Dow transmitted into and published in this district the statements at issue, and thus venue is proper here.   It is also clear that Mr. Reinhard has been damaged in this district, which, contrary to Mr. Liveris' claim (*see* Liveris Br. at 7), is also

24

relevant for venue purposes. *See Rothstein v. Carriere*, 41 F. Supp. 2d 381, 387 (E.D.N.Y. 1999)

("'The place where the harm occurred is . . . relevant for venue purposes'" (citation omitted)) .

On all or any of these grounds, the case belongs in New York.[7]

Conclusion

For these reasons, the Court should deny defendants' motions.

Dated:    New York, New York
          July 6, 2007

                                    Respectfully Submitted,

                                    Kramer Levin Naftalis & Frankel LLP

                                    By:   /s/  Gary P. Naftalis
                                          Gary P. Naftalis (GN-5489)
                                          Jonathan M. Wagner (JW-7197)
                                          Darren A. LaVerne (DL-9502)

                                          1177 Avenue of the Americas
                                          New York, NY 10036-2714
                                          (212) 715-9100

                                          Attorneys for Plaintiff J. Pedro Reinhard

---

[7]    Mr. Liveris suggests that venue in this district is improper because defendants circulated these defamatory statements in other districts as well. (*See* Liveris Br. at 6). To the contrary, it is "absolutely clear as a result of extensive case law that has developed over the years that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D Federal Practice & Procedure 3806.1; *see also Rothstein*, 41 F. Supp. 2d at 387 (plaintiff did not have to establish that district where action was brought had "the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [in the district], even if a greater part of the events occurred elsewhere."

Perhaps because Mr. Liveris can cite no legal support for his assertion that a substantial part of the events giving rise to Mr. Reinhard's defamation claim did not occur in this district, he focuses on Mr. Reinhard's contract claim. (*See* Liveris Br. at 6). But Mr. Reinhard has asserted a contract claim only against Dow, not Mr. Liveris, and Dow has waived any objection to venue. Moreover, to the extent the Court finds it necessary to consider the propriety of venue under § 1391(a)(2) with respect to Mr. Reinhard's contract claim, the Court can simply assert pendent venue over that claim, given that Mr. Reinhard's primary claim is for defamation based on statements directed to and published in this district. *See, e.g.; Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 463-64 (S.D.N.Y. 2000).

25