UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
J. PEDRO REINHARD,

                    Plaintiff,

      - against -                                                  07 Civ. 3641 (RPP)

THE DOW CHEMICAL CO., and                            **OPINION and ORDER**
ANDREW N. LIVERIS,
                    Defendants.
-----------------------------------------------------------------X

       Defendant The Dow Chemical Company ("Dow") moves to transfer pursuant to 28 U.S.C. § 1404(a). Defendant Andrew N. Liveris ("Liveris") moves to dismiss pursuant to Fed R. Civ. P. 12(b)(3), to transfer pursuant to 28 U.S.C. § 1406(a), or in the alternative, to join Defendant Dow's motion to transfer under 28 U.S.C. § 1404(a).

       For the reasons that follow, Dow's and Liveris' motions to transfer under §1404(a) are granted. Liveris' motion to dismiss under Fed R. Civ. P. 12(b)(3) or transfer under § 1406(a) is denied. The action is transferred to the Eastern District of Michigan.

**BACKGROUND**

**A. Factual Background**

    **1. The Parties**

       Plaintiff, J. Pedro Reinhard ("Reinhard"), was an employee of Dow for thirty-seven years. Reinhard became Chief Financial Officer ("CFO") and a member of the Board of Directors ("the Board") in 1995. Although he retired as CFO and Executive Vice President in 2005, he remained an employee director on the Board until his

termination in April, 2007.  (Compl., dated May 8, 2007, ¶ 14.)  Reinhard is a citizen of Brazil, a lawful permanent resident of the United States, and is domiciled in Florida.  (Id. ¶ 9.)

Defendant, The Dow Chemical Company, is a Delaware corporation that has its principal place of business in Michigan and engages in continuous activities in New York.  (Id. ¶ 10.)  Defendant, Liveris, is the Chairman, CEO, and President of Dow; he is a citizen of Australia, a lawful permanent resident of the United States, and is domiciled in Michigan.  (Id. ¶ 11.)

**2.  Rumors about a Dow Acquisition and Reinhard's Termination**

According to Defendants, rumors about a Dow acquisition began with a report in the *Financial Times* on January 18, 2007, which stated that a group of private equity firms were "working on a break-up bid for Dow."  (Dow Countercl., dated May 29, 2007, ¶ 10.) On February 25, 2007,  the *Sunday Express*, a United Kingdom newspaper, reported that a group of "global investors and American private equity giants were close to making a bid for Dow."  (Compl. ¶ 22.)  Reports relating to such a bid were also published in the *Evening Standard* on March 12, 2007.  (Dow Countercl. ¶ 15.)  On April 8, 2007, the *Sunday Express* reported that a group of Middle East investors and a group of private equity firms were potentially  "days away" from a bid. (Id. ¶ 20.)

Dow's response to these early reports rumors was to make "inquiries with the investment banking and financial community, to determine whether: (i) there was a basis for these rumors; and (ii) the source of these rumors."  (Id. ¶ 11.)[1]  Additionally, Dow had board meetings to discuss the reports, which were attended by Reinhard, at its

---

[1] Dow "retained [the law firm] Wachtell, Lipton . . . to advise the company concerning potential reactions to a takeover bid."  (Transcript of Oral Argument, dated August 2, 2007 ("8/2 Tr.") at 13.)

2

headquarters in Midland, Michigan on February 14 and March 16, 2007. (Id. at ¶¶ 12, 17.) After the second meeting, the company issued a press release stating that Dow had not had any discussions about a possible leveraged buyout. (See id. ¶ 23.)

On April 9, 2007, James Dimon ("Dimon") the Chief Executive Officer of J.P. Morgan Chase ("Morgan"),[2] is alleged to have told Liveris at a dinner meeting in Michigan that a London affiliate was working on an acquisition of Dow on behalf of Middle East investors. (Id. ¶ 24.) Dow contends that on April 10, 2007, Dimon called Liveris and stated that Reinhard and Romeo Kreinberg ("Kreinberg"), another Dow executive, were engaged in discussions about a Dow acquisition. (Id. ¶ 25.)[3] On the same day, Dow's outside counsel, James Saverese, spoke with Dimon and Liveris on a conference call to confirm the statements Dimon had made to Liveris. (See 8/2 Tr. at 14.)

On April 11, 2007, the first day of a previously scheduled board meeting,[4] Liveris addressed the allegations about Reinhard's and Kreinberg's alleged third party discussions regarding a bid for Dow. The Board discussed the extent of the Dow employees' involvement, the credibility of the witness, and what steps to take. (Dow Countercl. ¶ 27.) The Board unanimously decided that the information was credible and that Reinhard and Kreinberg should be terminated. (Id. ¶¶ 27-28.)

---

[2] Dow refers to its source as the "Bank's CEO," never naming James Dimon. (See generally Dow Ans.; Dow Countercl.) Reinhard states, however, that it is "alleged by Mr. Kreinberg in his complaint, and as is undisputed by Dow, the CEO was James Dimon, of Morgan Chase." (Pl.'s Opp'n., dated July 6, 2007 at 4; see Affidavit of Duncan Stuart, dated May 29, 2007 ("Stuart Aff.") Ex. C (Kreinberg Compl.) ¶ 2.)

[3] Reinhard denies participation in any meetings with respect to takeovers or acquisitions of Dow. (Compl. ¶35.) He alleges that on July 27, 2006, Dow lowered its earnings estimate for the year, its shares fell by more than ten percent, and "thereafter, rumors began to circulate that Dow might be a target for a buyout or other effort . . . ." (Id. ¶ 21.)

[4] Reinhard was absent from this meeting, having previously informed Liveris that he would not be able to attend for unrelated reasons. (See Dow Countercl. ¶ 29.)

3

At 7:00 AM, on April 12, 2007, prior to the Board meeting scheduled for that day, Liveris met with Reinhard in his office in Midland, Michigan. (Compl. ¶ 25.) Also present at this meeting were Charles Kalil (General Counsel to Dow), Paul Stern, Arnold Allemang (a Board member), and Martin Lipton of Wachtell, Lipton. (See Dow Countercl. ¶ 28.) At the meeting, Liveris told Reinhard that he had "received information" about Reinhard's participation in discussions about an acquisition of Dow. Liveris informed Reinhard that, based on this information, the company had concluded that Reinhard had engaged in grave misconduct and breaches of his fiduciary duty. (Compl. ¶ 25.) Reinhard alleges, and Dow denies, that Liveris offered Reinhard his financial benefits if he resigned immediately. (Id. ¶ 25; Dow Ans. ¶ 25.) Reinhard denied breaching his fiduciary duties and refused to resign; Dow terminated Reinhard that day. (Compl. ¶ 26.)

### 3. Reinhard's Termination Becomes Public

That same day, Dow issued a press release, in Michigan, which stated that Reinhard and Kreinberg had been terminated because they "engaged in business activity that was highly inappropriate and a clear violation of Dow's Code of Business Conduct."[5] (Id. ¶ 29.) Dow also published on its website "An Open Letter to Our Valued Customers" and mailed a "Supplement to Notice of the Annual Meeting and Proxy Statement,"[6] addressing both the alleged actions of Reinhard and his termination. (Id. ¶¶ 32, 36.) Reinhard released a statement on April 16, 2007 denying any involvement in a Dow acquisition. (Id. ¶ 35.)

---

[5] The press release was also published on Dow's website. (Compl. ¶ 31.)
[6] The "Supplement to Notice of the Annual Meeting and Proxy Statement" had the following return address: The Dow Chemical Company, c/o The Bank of New York, PO Box 11002, New York, NY 10286-1002. (Compl. ¶ 36.)

4

Reports of Reinhard's and Kreinberg's termination were published in various news sources, including: *Saginaw News*, *The Wall Street Journal*, *The New York Times*, and *The Financial Times*. (Id. ¶¶ 31, 33.) An article in *The Wall Street Journal* quoted Dow spokesperson, Christopher Huntley, stating that Reinhard's alleged third party discussions were conducted during "multiple meetings in multiple months in multiple locations [and] with a number of different parties." (Id. ¶ 33.)

### 4. Events Preceding the Instant Action

Dow and Reinhard engaged in ineffective settlement talks for three weeks after Reinhard's termination. (Declaration of Gary P. Naftalis, dated July 5, 2007 ("Naftalis Decl.") ¶¶ 2-3.) After receiving a settlement proposal from Dow on May 7, 2007, Dow and Reinhard agreed to a conference call on May 8, 2007 at 11 a.m. to further discuss the proposal. (Id. ¶ 3.) On May 8, 2007, Dow cancelled the conference call and filed suit. (Id. ¶ 4.)

On May 8, 2007, at 8:30 a.m., Dow filed an action for breach of contract, breach of fiduciary duty, and declaratory judgment against Reinhard and Kreinberg in the Eastern District of Michigan. Later that day, Reinhard filed this complaint against Dow and Liveris. [7] (Id. ¶ 3.) On the same day, Kreinberg filed his own action in New York State Supreme Court.[8]

### B. Procedural Background

---

[7] Reinhard alleges that Dow was aware of his preparation for litigation in early May. He also claims that he did not discover that Dow had filed suit against him in Michigan until he had filed the instant action. (Naftalis Decl. ¶¶ 3-4.)

[8] Kreinberg's action was subsequently removed to federal court in this district and then transferred to Michigan by Judge Marrero. See Kreinberg v. Dow Chemical Co., 2007 WL 2141391 (S.D.N.Y. July 23, 2007).

The May 8, 2007, complaint filed by Reinhard in this district against Defendants Dow and Liveris alleged claims for (1) libel and (2) breach of contract. On May 29, 2007, Dow filed their Answer and Counterclaim, as well as this Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). On June 19, 2007, Liveris filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3), to Transfer Pursuant to 28 U.S.C. § 1406(a), or in the Alternative to Join Dow's Motion to Transfer under 1404(a). On July 6, 2007, Reinhard filed a Memorandum in Opposition to Dow's Motion to Transfer and Liveris' Motion to Dismiss or Transfer. Defendants submitted a reply memorandum on July 16, 2007 in further support of their motions. Oral arguments were held on August 2, 2007.

## DISCUSSION

**A. Legal Standard**

Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1996). District courts have broad discretion to determine convenience and justice on a case-by-case basis. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006) (citations omitted). Courts should consider factors of private and public interest. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947). The following factors are considered in determining convenience and justice: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the ability to compel the attendance of unwilling witnesses, [and] (7) the relative

means of the parties." D.H. Blair & Co., 462 F.3d at 106-107.  The majority of district courts in this circuit also include two additional factors: "[(8)] a forum's familiarity with governing law . . . [and (9)] trial efficiency and the interests of justice, based on the totality of the circumstances." Strougo v. Brantley Capital Corp., 2007 WL 1683348, at *5 (S.D.N.Y. June 3, 2007) (citations omitted).  The party making the motion to transfer has the burden to show that the transfer is warranted.  D.H. Blair & Co., 462 F.3d at 106.

After a consideration of all nine factors, the Court finds that Defendants have met their burden of showing by a preponderance of the evidence that this case should be transferred to the Eastern District of Michigan.

### 1. Plaintiff's Choice of Forum

Normally, a court should "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum . . . ." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d. 549, 561 (S.D.N.Y. 2000) (internal quotations omitted).  However, a plaintiff's choice of forum is given less deference when the forum is "neither the [plaintiff's] home nor the place where the operative facts of the action occurred." Hall v. South Orange, 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000) (internal quotations omitted).

Although Reinhard chose to bring suit in the Southern District of New York, he is domiciled in Florida, and most of the operative facts took place in Michigan.[9] Reinhard's assertion that he "travels to New York at least once a month to attend board meetings . . . and to transact other business," (Pl.'s Opp'n at 17), is not persuasive. See Herbert Ltd. Pushup. v. Elec. Arts, Inc., 325 F. Supp. 2d 282, 291 (S.D.N.Y. 2004)

---

[9] See infra § A(5), discussing locus of operative facts.

7

(holding that plaintiff's forum will receive relatively little weight because even though plaintiff alleges that it "conducts all of its business operations" in its chosen forum, it is not plaintiff's home district and the majority of operative facts took place elsewhere).

### 2. The Convenience of Witnesses

The convenience of witnesses weighs in favor of a transfer to Michigan. The convenience of party and non-party witnesses is an important factor: "indeed, certain courts in this district have called it 'probably the single-most important factor in the analysis of whether transfer should be granted.'" Strougo, 2007 WL 1683348, at *5 (internal citations omitted). The defendant has the burden of "clearly specify[ing] the key witnesses to be called and must make a general statement of what their testimony will cover." Peterman v. U.S., 2006 WL 2806417, at *2 (N.D.N.Y. Sept. 28, 2006) (citing Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978)).

Dow's Assistant General Counsel, Duncan Stuart, listed the following possible witnesses all located in Michigan: both defendants, Dow and Liveris; Dow spokesperson, Chris Huntley, the other employee named in the complaint; Dow's public affairs personnel who were involved in releasing statements about Reinhard's termination; Dow's human resources personnel who were involved in Reinhard's compensation plans and the finance and mergers and acquisitions personnel; and Reinhard's assistant who made his international travel plans. (Stuart Aff. ¶¶ 6-12.)

Despite Dow's long list of Michigan witnesses, Reinhard believes that this factor should weigh in favor of maintaining the action in this district because Dimon, "arguably

the most important non-party witness [for the libel claim]," and other possible Morgan witnesses reside either in New York or London. (Pl. Opp'n at 13.)[10]

At oral argument, however, Dow's counsel, David Bernick, pointed out that although Mr. Dimon had provided information to Dow about the proposed leveraged buyout planned by groups of investors in the United Kingdom and Oman at meetings in the United Kingdom, Dimon was not in attendance at these meetings, nor were the other "Morgan sources," nor was outside counsel, Saverese, who participated in the discussions with Dimon and Liveris. (See 8/2 Tr. at 11-17.) Thus, the potential witnesses residing in New York will not be able to testify as to the truth or falsity of the allegedly defamatory statements made by Dow. The witnesses who might have personal knowledge about the statements are located in the U.K. and Oman.

The most the New York witnesses could testify about would be whether the allegedly libelous statements made by Dow and Liveris about Plaintiff were fair and reasonable in light of the information they had provided to Defendants. Thus, their testimony at trial would only be relevant in so far as it might bear on any bad intent or reckless negligence on the part of Defendants, and, even then, only if the statements of Defendants about Plaintiff contradicted the information supplied by Mr. Dimon and the other alleged Morgan witnesses. On the other hand, Plaintiff is also alleging malice on the part of Defendant Liveris based on prior interactions with Plaintiff. (See Compl. ¶ 49.) The witnesses to such prior statements of Defendant Liveris are most likely all

---

[10] While Plaintiff's opposition papers refer to "other Morgan witnesses," at oral argument Dow's counsel made the uncontradicted statement that Plaintiff's Rule 26(f) statement listed only Mr. Reinhard, Mr. Kreinberg, Mr. Dimon, and three Dow Employees in Michigan, as the persons known to them to have knowledge of the claims in the Complaint. (See 8/2 Tr. at 20.) Furthermore, counsel for Plaintiff, stated at oral argument that the allegedly false statements were "based solely and exclusively on a conversation . . . with Mr. Dimon . . . ." (Id. at 39.)

employees of Dow residing in Michigan, or members of Dow's board, a number of whom live in Michigan, while only one lives in New York. (See 8/2 Tr. at 65.)

Furthermore, the witnesses to Plaintiff's breach of contract claim, other than Plaintiff, would appear to be based solely in Michigan, since the contract was formed and all the acts alleged in the Complaint bearing on its breach occurred in Michigan. (See Compl. ¶¶ 53-57.) On balance, the convenience of the witnesses will best be served by a transfer to Michigan.

### 3. Location of documents and relative ease of access to sources of proof

The location of relevant documents and relative ease of access to sources of proof weigh in favor of a transfer to Michigan. Dow's relevant documents are minutes from the Board's meetings involving Reinhard's termination, press release drafts, Reinhard's documents and emails, and the documents and emails of other Dow employees. (Stuart. Aff. ¶ 13.) These documents are all located in Michigan. (Id.) Because of technological advancements and the ability to electronically send documents to the site of the litigation, the location of hard copies is given little weight. See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. LaFarge N. Am. Inc., 474 F. Supp. 2d 474 (S.D.N.Y. 2007). However, because email discovery is likely and hard drive discovery may be required, this factor favors a transfer to Michigan.

### 4. The Convenience of Parties

The convenience of the parties weighs in favor of Dow's motion to transfer: "[w]here neither party resides in the chosen forum, 'it is only logical that a transfer to the residence of one of them would be more convenient.'" Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 756 (S.D.N.Y. 2000) (quoting ZPC 2000, Inc. v. SCA Group, Inc., 86 F.

10

Supp. 2d 274, 279 (S.D.N.Y. 2000)). Both defendants, Dow and Liveris, reside in Michigan and Reinhard himself is domiciled in Florida. (Compl. ¶¶ 9-11.) Though Reinhard claims that it will be more convenient for him to travel to New York than to Michigan (Pl.'s Opp'n. 17), he must travel regardless of where the case is tried.[11] Moreover, though a trip from Florida or New York to Bay City, Michigan, may indeed be inconvenient for parties residing on the East Coast, a trip to New York will be equally inconvenient for those parties residing in Michigan.

### 5. Locus of operative facts

The locus of operative facts weighs in favor of Dow's motion to transfer. The claims of libel and breach of contract are based largely on Reinhard's employment and compensation agreements, Dow's board meetings, Reinhard's termination, and the allegedly defamatory press releases and letters to shareholders issued by Dow. These events all took place in Michigan. (See Compl. ¶¶ 24-26, 28-32, 40-42.) The locus of operative facts in a breach of contract case looks at "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Prudential Sec. v. Norcom Dev., Inc., 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998). Reinhard's breach of contract claim is based on multiple contracts and compensation plans, at least one of which was signed by executives in Midland, Michigan. (Compl. ¶ 54; Naftalis Decl. Ex. J.) The Board of Directors and the Dow personnel who interpret and administer the compensation plans, meets in Midland, Michigan. (Dow Countercl. ¶ 35.)

---

[11] Plaintiff's counsel, whose offices are located in New York, and who would not have to travel if the action were kept in this district, noted that it took them "14 hours to get home from [a] conference [in Bay City]." (8/2 Tr. at 47.) While the Court empathizes with this inconvenience, it also notes that convenience of counsel is not a factor to be weighed in a motion to transfer.

11

As for the libel claim, Reinhard alleges that he has suffered the greatest harm in New York, since most of the defamatory statements were circulated in New York and because New York is the center of the financial press. (Compl. ¶ 37; Pl.'s Opp'n at 15.) The harm to Reinhard based on the publication of Dow's press release in New York does weigh in favor of a trial in this district, however, it is not a determinative factor when all of the operative facts are considered together. See Curtis Publ'g Co. v. Birdsong, 360 F.2d 344, 347 (5th Cir. 1966) (holding that in a multi-state publication of libel, it is not enough that the Post was sold in Alabama, as this would create a forum in all other states as well)); see also Barge v. Daily Journal Corp., 1996 WL 434561, at * 4-5 (S.D.N.Y. Aug. 2, 1996) (holding that although allegedly defamatory claims were published in Seattle and the plaintiff was harmed in Seattle, the litigation should be situated in California because that was the location where more operative facts took place). Here, even if the circulation of the allegedly defamatory statement did the most harm to Reinhard in New York, the majority of operative facts still took place in Michigan.

### 6. Availability of process to compel the attendance of unwilling witnesses

The availability of process to compel the attendance of unwilling witnesses is a neutral factor. Important elements for this factor are the inability to compel process over a witness, the availability of alternate forms of testimony, and a showing that the witness would be unwilling to testify. See Citigroup Inc., 97 F. Supp. 2d at 561-562 (holding that although it may be preferable to have live testimony in the issue at hand, this factor had little weight because defendants failed to show or suggest an unwillingness of the non-party witness to testify).

As Plaintiff notes, Dimon may be beyond Michigan's subpoena power. (Pl.'s Opp'n at 16.) However, there has been no suggestion that Mr. Dimon or any other witness would be unwilling to travel to testify.[12] Furthermore, "in light of the option of videotaping testimony of witnesses unwilling to travel," Dealtime.com, 123 F. Supp. 2d at 757 (citations omitted), the witnesses' possible unwillingness to appear in Michigan would not be a determinative factor in this case.

### 7. Relative means of the parties

The relative means of the parties weighs against a transfer. If a "disparity exists between the parties, such as an individual suing a large corporation, the relative means of the parties may be considered." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). However, where "no showing has been made that [a change of forum] would impose an undue hardship on the plaintiff . . . this factor weighs neutrally in the overall analysis." Id. Reinhard states that litigating in Michigan would "further strain [his] financial resources," (Affidavit of J. Pedro Reinhard, dated July 6, 2007, ¶ 8), but, given the depth of his financial resources, he has not shown that traveling to Michigan for this litigation will be an undue hardship.[13]

### 8. Forum's familiarity with the governing law

The forum's familiarity with the governing law is a neutral factor in the analysis. It is likely that Delaware law will govern the breach of contract action and breach of fiduciary duty counterclaim because Dow is incorporated in Delaware.

---

[12] At oral argument, neither party indicated knowledge about Mr. Dimon's willingness to travel to Michigan (See 8/2 Tr. at 44, 54.)
[13] According to a 2006 SEC filing by Dow, Reinhard's annual compensation in 2005, less long term incentives, was over $2 million. (Declaration of Frank Holozubiec, Ex. B (Dow Form 14A) at 4.)

For the libel claim, it is not certain which state's laws will govern.[14] Regardless, as noted by Plaintiff's counsel at oral argument, libel laws are similar enough that a judge will be familiar with the governing law no matter which state's statute ends up applying to the claim in this case.[15] Therefore, because the breach of contract and breach of fiduciary duty claim is governed by Delaware law, which is foreign to both jurisdictions, and because a judge in either forum should be familiar with the principles of libel law, this factor is neutral.

### 9. Trial efficiency and the interests of justice

Now that both Dow's action and Kreinberg's action are located in the Eastern District of Michigan, efficiency and the interests of justice weigh in favor of transferring this lawsuit to that district. It is logistically practical to have all trial and discovery scheduling issued from one court given that so many of the witnesses and document production will coincide in all three cases.

**B. Liveris' motion to dismiss pursuant to Rule 12(b)(3) or transfer pursuant to § 1406(a) is denied; his motion to transfer pursuant to § 1404(a) is granted.**

Liveris' motion to dismiss for lack of venue under Rule 12(b)(3), and his motion to transfer under §1406(a) are denied.[16] Liveris is a citizen of Australia and a lawful

---

[14] The following are factors to consider in multi-state libel cases: "(1) the state of the plaintiff's domicile; (2) the state of plaintiff's principal activity to which the alleged defamation relates; (3) the state where the plaintiff in fact suffered greatest harm; (4) the state of the publisher's domicile or incorporation; (5) the state where the defendant's main publishing office is located; (6) the state of principal circulation; (8) the state where the libel was first seen; and (9) the law of the forum." Weinstein v. Friedman, 1996 WL 137313, *8-9 (S.D.N.Y. Mar. 26, 1996). It is not immediately clear whether Michigan or New York has more connections to the libel claim.

[15] ( See 8/2 Tr. at 42 ("I don't have any reason to believe that the general principles of libel law are any different in Michigan than they are in New York.").)

[16] A motion to dismiss for improper venue is made under Fed. R. Civ. P. 12(b)(3). Section 1406 (a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (1996).

permanent resident of the United States.[17] (Compl. ¶ 11; Dow Ans. ¶ 11.) Under § 1391(d), "an alien may be sued in any district." Accordingly, venue is proper in this district or in the Eastern District of Michigan.

Liveris' Motion to Transfer under § 1404(a) is granted on the same grounds as Dow's motion.

## CONCLUSION

For the aforementioned reasons, it is hereby ordered that the Clerk of Court is directed to transfer this action to the Eastern District of Michigan.

IT IS SO ORDERED.

Dated: New York, New York
August 13, 2007

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Opinion and Order sent to:

*Counsel For Plaintiff, J. Pedro Reinhard:*

Kramer, Levin, Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attn: Gary P. Naftalis
Tel: 212-715-9100
Fax: 212-715-9238

*Counsel for Defendants, Dow Chemical Co., and Andrew N. Liveris:*

Kirkland & Ellis LLP
Citigroup Center

---

[17] Section 1391(d) applies to all aliens, resident or non-resident. See Haaretz Daily Newspapers, Ltd. v. Maariv Modiin Pub. Co., Ltd., 1999 WL 796163, at *1 (S.D.N.Y. Oct. 6, 1999).

153 East 53rd St.
New York, NY 10022
Attn: David M. Bernick
Tel: 212-446-4800
Fax: 212-446-4900